**E-FILED**
Tuesday, 16 December, 2014  10:25:35 AM
Clerk, U.S. District Court, ILCD
33,36,APPEAL,CLOSED,REFER

SHORT RECORD
No. 14-3717
Filed: 12/16/2014

# U.S. District Court
# CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:11−cv−03134−SEM−TSH

| | |
|---|---|
| Moore et al v. Madigan et al | Date Filed: 05/12/2011 |
| Assigned to: Judge Sue E. Myerscough | Date Terminated: 11/24/2014 |
| Referred to: Magistrate Judge Tom Schanzle−Haskins | Jury Demand: None |
| Case in other court:  Seventh Circuit, 12−01269 | Nature of Suit: 950 Constitutional − State Statute |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Michael Moore**                 represented by   **David D Jensen**
DAVID JENSEN PLLC
111 John Street
Suite 420
New York, NY 10038
212−380−6615
Fax: 917−591−1318
Email: david@djensenpllc.com
*ATTORNEY TO BE NOTICED*

**David G Sigale**
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road
Suite 304
Glen Ellyn, IL 60137
630−452−4547
Fax: 630−596−4445
Email: dsigale@sigalelaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Hooks**                 represented by   **David D Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation, Inc.**   represented by   **David D Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David G Sigale**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peggy Fechter**                    represented by  **David D Jensen**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **David G Sigale**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jon Maier**                        represented by  **David D Jensen**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **David G Sigale**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Illinois Carry**                   represented by  **David D Jensen**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

                                     **David G Sigale**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Lisa Madigan**                     represented by  **Terence J Corrigan**
                                     ILLINOIS ATTORNEY GENERAL
                                     500 S Second St
                                     Springfield, IL 62706
                                     217−782−5819
                                     Fax: 217−524−5091
                                     Email: tcorrigan@atg.state.il.us
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **David Andrew Simpson**
                                     ILLINOIS ATTORNEY GENERAL
                                     12th Floor
                                     100 W Randolph St
                                     Chicago, IL 60601
                                     602−542−8572
                                     Email: david.simpson@azag.gov
                                     *TERMINATED: 05/20/2014*

*ATTORNEY TO BE NOTICED*

**Karen L McNaught**
ILLINOIS ATTORNEY GENERAL
500 S Second St
Springfield, IL 62706
217−782−1841
Fax: 217−524−5091
Email: kmcnaught@atg.state.il.us
*ATTORNEY TO BE NOTICED*

**Karl R Triebel**
ILLINOIS ATTORNEY GENERAL
12th Floor
100 W Randolph St
Chicago, IL 60601
312−814−2391
Fax: 312−814−2253
Email: ktriebel@atg.state.il.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Patrick Keen**
*TERMINATED: 05/23/2011*

**Defendant**

**Hiram Grau**                          represented by    **Terence J Corrigan**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David Andrew Simpson**
                                                         (See above for address)
                                                         *TERMINATED: 05/20/2014*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Karen L McNaught**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Karl R Triebel**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**Brady Center to Prevent Gun Violence**    represented by    **Robert J Harris**
Legal Action Project                                        HARRIS WINICK LLP
1225 Eye Street, N.W.                                       333 W. Wacker Dr.
Suite 1100                                                  Suite 2060
Washington, DC 20005                                        Chicago, IL 60606
                                                            (312)641−3700

Email: rharris@harriswinick.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/12/2011 | 1 | | COMPLAINT against Patrick Keen, Lisa Madigan ( Filing fee $ 350 receipt number 0753−1148941.), filed by Michael Moore, Second Amendment Foundation, Inc., Charles Hooks.(Sigale, David) (Entered: 05/12/2011) |
| 05/12/2011 | 2 | | MOTION for Leave to Appear pro hac vice pending admission *(for David D. Jensen)* by Plaintiffs Charles Hooks, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 5/31/2011 (Sigale, David) (Entered: 05/12/2011) |
| 05/12/2011 | 3 | | Exhibit re 1 Complaint *F.R.Civ.P. 7.1 Corporate Disclosure Statement (SAF)* by Charles Hooks, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 05/12/2011) |
| 05/12/2011 | 4 | | Exhibit re 1 Complaint *(Civil Cover Sheet)* by Charles Hooks, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 05/12/2011) |
| 05/13/2011 | | | TEXT ORDER: On May 12, 2011, Plaintiffs filed a Motion for Leave to Appear Pro Hac Vice (Motion) (d/e 2) in which they sought leave for one of their attorneys, David D. Jensen, to appear pro hac vice during the pendency of his application for admission to the bar of this Court. The Motion stated that: (1) Mr. Jensen is a member in good standing of the bars of the States of New York and New Jersey and that certificates of good standing from both jurisdictions were attached to the Motion; and (2) Mr. Jensen had applied for admission to the bar of this Court pursuant to Local Rule 83.5(F). Review of the Motion showed that the certificates of good standing from New York and New Jersey have not been submitted. Further, as of this date, the Court has not received Mr. Jensen's application for admission to the bar of this Court. Therefore, the Motion is ALLOWED subject to the following condition. Mr. Jensen is ORDERED to complete his admission by June 17, 2011. He will be terminated from the case if he is not admitted by that date. Entered by Judge Sue E. Myerscough on 5/13/2011. (CC, ilcd) (Entered: 05/13/2011) |
| 05/19/2011 | 5 | | AMENDED COMPLAINT against Patrick Keen, Lisa Madigan, filed by Michael Moore, Second Amendment Foundation, Inc., Charles Hooks.(Sigale, David) (Entered: 05/19/2011) |
| 05/20/2011 | | | TEXT ORDER VACATED pursuant to 6/8/2011 Text Order. TEXT ORDER: The Complaint (d/e 1) in this case was filed on May 12, 2011. Plaintiffs have named Lisa Madigan in her official capacity as Attorney General of the State of Illinois as a defendant. The Attorney General's Office is representing Judge Myerscough as a defendant in a case currently on appeal. The Clerk of the Court is directed to send immediately, by electronic mail, a Notice Concerning Waiver of Judicial Disqualification and a copy of this minute entry to counsel of record. If the parties and their respective counsel wish to waive Judge Myerscough's disqualification, they must send written notification to Barb Hansen, U.S. District Court, Clerk's Office, Springfield, Illinois, by close of business on June 3, 2011. If waivers are not |

| | | |
|---|---|---|
| | | received from all parties and counsel by then, Judge Myerscough intends to disqualify herself in this proceeding. Entered by Judge Sue E. Myerscough on 05/20/2011. (VM, ilcd) Modified on 6/8/2011 (ME, ilcd). (Entered: 05/23/2011) |
| 05/23/2011 | 6 | Summons Issued as to defendant Lisa Madigan. (VM, ilcd) (Entered: 05/23/2011) |
| 05/23/2011 | 7 | **+++ SEALED DOCUMENT − ORIGINAL DOCUMENT UNREDACTED** Summons issued to defendant Lisa Madigan. (VM, ilcd) (Entered: 05/23/2011) |
| 05/23/2011 | 8 | Summons Issued as to defendant Hiram Grau. (VM, ilcd) (Entered: 05/23/2011) |
| 05/23/2011 | 9 | **+++ SEALED DOCUMENT − ORIGINAL DOCUMENT UNREDACTED** Summons issued as to defendant Hiram Grau. (VM, ilcd) (Entered: 05/23/2011) |
| 05/24/2011 | 10 | Notice Concerning Waiver of Judicial Disqualification sent to parties by clerk notifying them they have until June 3, 2011 to notify the Clerk's Office as to their wishes regarding disqualification (BH, ilcd) (Entered: 05/24/2011) |
| 05/24/2011 | | Remark: Document #10 "Notice Concerning Waiver of Judicial Disqualification incorrectly states Jensen as pro se. It is hereby corrected to state that notice has been mailed to ATTORNEY Jensen (BH, ilcd) (Entered: 05/24/2011) |
| 06/08/2011 | | TEXT ORDER: On May 20, 2011, the Court entered a Text Order concerning Judge Myerscough's potential conflict and possible recusal. In that Text Order, the Court advised the parties that Judge Myerscough would recuse herself unless all parties submitted signed waivers. The potential conflict arose from the Illinois Attorney General's representation of Judge Myerscough in a lawsuit filed against her. The underlying basis for the potential conflict no longer exists. Therefore, Judge Myerscough will not recuse. Accordingly, the May 20, 2011, Text Order is VACATED. Entered by Judge Sue E. Myerscough on 6/8/2011. (ME, ilcd) (Entered: 06/08/2011) |
| 06/09/2011 | 11 | SUMMONS Returned Executed by Jon Maier, Illinois Carry, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Peggy Fechter. Lisa Madigan served on 5/24/2011, answer due 7/25/2011. (Sigale, David) (Entered: 06/09/2011) |
| 06/09/2011 | 12 | SUMMONS Returned Executed by Jon Maier, Illinois Carry, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Peggy Fechter. Hiram Grau served on 5/24/2011, answer due 7/25/2011. (Sigale, David) (Entered: 06/09/2011) |
| 07/07/2011 | 13 | MOTION for Preliminary Injunction , and alternatively, MOTION for Permanent Injunction by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 7/25/2011 (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 14 | MEMORANDUM in Support re 13 MOTION for Preliminary Injunction , and alternatively MOTION for Permanent Injunction filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second |

| | | Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
|---|---|---|
| 07/07/2011 | 15 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Michael Moore* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 16 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Charles Hooks* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 17 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Peggy Fechter* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 18 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Jon Maier* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 19 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Miko Tempski for Second Amendment Foundation* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/07/2011 | 20 | AFFIDAVIT in Support re 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction *Declaration of Tim W. Bowyer for Illinois Carry* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 07/07/2011) |
| 07/22/2011 | | TEXT ORDER: Magistrate Judge Charles Evans recuses himself from this case and transfers case to Magistrate Judge Byron Cudmore for all further proceedings. Entered by Magistrate Judge Charles H. Evans on 7/22/2011. (VM, ilcd) (Entered: 07/22/2011) |
| 07/25/2011 | 21 | MOTION for Extension of Time to File Answer re 5 Amended Complaint, MOTION for Extension of Time to File Response/Reply as to 13 MOTION for Preliminary Injunction , *and alternatively* MOTION for Permanent Injunction by Defendants Hiram Grau, Lisa Madigan. Responses due by 8/11/2011 (Corrigan, Terence) (Entered: 07/25/2011) |
| 07/25/2011 | 22 | NOTICE of Appearance of Attorney by Karen L McNaught on behalf of Hiram Grau, Lisa Madigan (McNaught, Karen) (Entered: 07/25/2011) |
| 07/25/2011 | | TEXT ORDER: Defendants have filed an Uncontested Motion for Enlargement of Time (Motion) (d/e 21). For the reasons stated therein, Defendants' Motion (d/e 21) is GRANTED. Defendants are given until July |

| | | 27, 2011, to respond to Plaintiffs' Motion for Preliminary and/or Permanent Injunction and to answer or otherwise plead to Plaintiffs' Amended Complaint. Entered by Judge Sue E. Myerscough on 7/27/2011. (VM, ilcd) (Entered: 07/25/2011) |
|---|---|---|
| 07/27/2011 | 23 | NOTICE of Appearance of Attorney by David Andrew Simpson on behalf of Hiram Grau, Lisa Madigan (Simpson, David) (Entered: 07/27/2011) |
| 07/27/2011 | | TEXT ORDER: Hearing on Motion for Preliminary and/or Permanent Injunction set for August 4, 2011, at 10 AM in Courtroom 1 in Springfield before Judge Sue E. Myerscough. Entered by Judge Sue E. Myerscough on 7/27/2011. (VM, ilcd) (Entered: 07/27/2011) |
| 07/27/2011 | 24 | MOTION to Dismiss by Defendants Hiram Grau, Lisa Madigan. Responses due by 8/15/2011 (Corrigan, Terence) (Entered: 07/27/2011) |
| 07/27/2011 | 25 | MEMORANDUM in Support re 24 MOTION to Dismiss filed by Defendants Hiram Grau, Lisa Madigan. (Corrigan, Terence) (Entered: 07/27/2011) |
| 07/27/2011 | 26 | RESPONSE to Motion re 13 MOTION for Preliminary Injunction , and alternatively MOTION for Permanent Injunction filed by Defendants Hiram Grau, Lisa Madigan. (Attachments: # 1 Coffman Affidavit, # 2 Hosteny Affidavit)(Corrigan, Terence) (Entered: 07/27/2011) |
| 07/27/2011 | 27 | MOTION for Leave to File *Amicus Brief in Support of Defendants* by Amicus Brady Center to Prevent Gun Violence. Responses due by 8/15/2011 (Attachments: # 1 Exhibit)(Harris, Robert) (Entered: 07/27/2011) |
| 08/01/2011 | | TEXT ORDER: The "Motion for Amicus Curiae Brief by Brady Center to Prevent Gun Violence for Leave to File an Amicus Brief in Support of Defendants" (d/e 27) is GRANTED. Because a preliminary injunction hearing is scheduled for August 4, 2011, Plaintiffs' response to the Amicus Brief is due on or before August 3, 2011. Entered by Judge Sue E. Myerscough on 8/01/2011. (VM, ilcd) (Entered: 08/01/2011) |
| 08/02/2011 | 28 | BRIEF of Amicus Curiae by Brady Center to Prevent Gun Violence. (MJ, ilcd) (Entered: 08/02/2011) |
| 08/03/2011 | 29 | RESPONSE to Motion re 27 MOTION for Leave to File *Amicus Brief in Support of Defendants* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 08/03/2011) |
| 08/04/2011 | | Minute Entry for proceedings held before Judge Sue E. Myerscough: MOTION HEARING on (d/e 13) MOTION for Preliminary Injunction filed by Jon Maier, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Illinois Carry, Peggy Fechter. Plaintiffs represented by Attorneys David D. Jensen and David G. Sigale. Defendants represented by Attorneys Terence J. Corrigan and David Andrew Simpson. Plaintiff's Motion heard and argued. Motion taken under advisement. Hearing adjourned. (Court Reporter KS.) (CT, ilcd) Modified on 8/8/2011 − Corrected date of hearing (CT, ilcd). (Entered: 08/08/2011) |
| 08/15/2011 | 30 | MEMORANDUM in Opposition re 24 MOTION to Dismiss filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/15/2011) |
| 08/23/2011 | 31 | | MOTION to Clarify re 26 Response to Motion by Defendants Hiram Grau, Lisa Madigan. Responses due by 9/9/2011 (Corrigan, Terence) (Entered: 08/23/2011) |
| 08/23/2011 | 32 | | RESPONSE to Motion re 31 MOTION to Clarify re 26 Response to Motion filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 08/23/2011) |
| 09/12/2011 | 33 | | MOTION to Cite Supplemental Authority re 24 MOTION to Dismiss, 26 Response to Motion *for Preliminary Injunction* by Defendants Hiram Grau, Lisa Madigan. Responses due by 9/29/2011 (Attachments: # 1 Kachalsky Opinion)(Corrigan, Terence) (Entered: 09/12/2011) |
| 09/13/2011 | 34 | | RESPONSE to Motion re 33 MOTION to Cite Supplemental Authority re 24 MOTION to Dismiss, 26 Response to Motion *for Preliminary Injunction* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 09/13/2011) |
| 11/02/2011 | 35 | | TEXT ORDER: The Court has received a letter in reference to this case that it has forwarded by United States Postal Service mail to the Parties. Entered by Judge Sue E. Myerscough on 11/2/2011. (VM, ilcd) (Entered: 11/02/2011) |
| 11/02/2011 | 36 | | **+++ SEALED DOCUMENT − ORIGINAL DOCUMENT UNREDACTED** Letter. (VM, ilcd) (Entered: 11/02/2011) |
| 12/01/2011 | 37 | | NOTICE OF FILING OFFICIAL TRANSCRIPT of Motion for Preliminary Injunction Proceedings held on August 4, 2011, before Judge Sue E. Myerscough. Transcript purchased by: David Jensen.<br><br>**IMPORTANT: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Motion of Requested Redactions shall be e−filed with the Court. Access to this motion will be restricted to the Court and the attorneys of record in the case. If no such Notice and Motion are filed, the transcript may be made remotely, electronically available to the public, without redaction, 90 days from the date initially filed. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the Clerk's Office public terminal or contact the Court Reporter for purchase. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>(ME, ilcd) (Entered: 12/01/2011) |
| 01/19/2012 | | | TEXT ORDER: The Court now considers Defendants' Motion to Clarify (d/e 31), in which Defendants move to clarify a point made in their Response to Plaintiffs' Motion for a Preliminary Injunction (d/e 26). Plaintiffs do not oppose the Motion. See d/e 32. Defendants' Motion to Clarify is GRANTED. |

| | | Also before the Court is Defendants' Motion to Cite Supplemental Authority (d/e 33), in which Defendants request leave to cite an additional case in support of Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction (d/e 26) and Motion to Dismiss (d/e 24). Plaintiffs do not oppose the Motion. See d/e 34. Defendants' Motion to Cite Supplemental Authority (d/e 33) is GRANTED. Entered by Judge Sue E. Myerscough on 01/19/2012. (VM, ilcd) (Entered: 01/19/2012) |
|---|---|---|
| 02/03/2012 | 38 | ORDER granting 24 Motion to Dismiss; denying 13 Motion for Preliminary Injunction; denying 13 Motion for Permanent Injunction; ORDER. Entered by Judge Sue E. Myerscough on 2/3/2012. (CT, ilcd) (CT, ilcd). (Entered: 02/03/2012) |
| 02/03/2012 | 39 | JUDGMENT in favor of Hiram Grau, Lisa Madigan against Brady Center to Prevent Gun Violence, Illinois Carry, Second Amendment Foundation, Inc., Charles Hooks, Jon Maier, Michael Moore, Peggy Fechter (CT, ilcd) (Entered: 02/03/2012) |
| 02/03/2012 | 40 | NOTICE OF APPEAL as to 38 Order on Motion to Dismiss, Order on Motion for Preliminary Injunction, Order on Motion for Permanent Injunction, Terminate Deadlines and Hearings, by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Filing fee $ 455, receipt number 0753−1306898. (Jensen, David) (Entered: 02/03/2012) |
| 02/06/2012 | 41 | Short Record of Appeal Sent to US Court of Appeals re 40 Notice of Appeal. (VM, ilcd) (Entered: 02/06/2012) |
| 02/06/2012 | 42 | NOTICE of Docketing Record on Appeal from USCA re 40 Notice of Appeal, filed by Jon Maier, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Illinois Carry, Peggy Fechter. USCA Case Number 12−1269 (VM, ilcd) (Entered: 02/06/2012) |
| 05/09/2012 | 43 | Request from USCA for Long Record re 40 Notice of Appeal,. (VM, ilcd) (Entered: 05/09/2012) |
| 05/09/2012 | 44 | Letter of Transmittal/Certification to USCA via e−mail re 40 Notice of Appeal consisting of 1 volume of pleadings, 1 Transcript and 1 sealed document. (VM, ilcd) (Main Document 44 replaced on 5/9/2012) (VM, ilcd). (Entered: 05/09/2012) |
| 05/09/2012 | 45 | Receipt of long Record on Appeal received via e−mail by USCA. (VM, ilcd) (Entered: 05/09/2012) |
| 12/18/2012 | 46 | ORDER of USCA as to 40 Notice of Appeal. It is ordered that the motion is GRANTED. The appellees' petition for rehearing, if any, is due by January 8, 2013. No further extensions of time will be allowed. (VM, ilcd) (Entered: 12/18/2012) |
| 02/22/2013 | 47 | USCA ORDER Denying Rehearing as to 40 Notice of Appeal, filed by Jon Maier, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Illinois Carry, Peggy Fechter (VM, ilcd) (Entered: 02/22/2013) |
| 06/04/2013 | 48 | ORDER of USCA as to 40 Notice of Appeal, filed by Jon Maier, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Illinois Carry, Peggy Fechter. It is ordered that the motion to stay mandate for additional 30 |

| | | |
|---|---|---|
| | | days is GRANTED. This court's mandate is STAYED until July 9, 2013. No further extensions to stay the Court's mandate will be granted. (VM, ilcd) (Entered: 06/04/2013) |
| 07/09/2013 | 49 | NOTICE of Appearance of Attorney by Karl R Triebel on behalf of Hiram Grau, Lisa Madigan (Triebel, Karl) (Entered: 07/09/2013) |
| 07/09/2013 | 50 | MANDATE of USCA as to 40 Notice of Appeal, filed by Jon Maier, Second Amendment Foundation, Inc., Charles Hooks, Michael Moore, Illinois Carry, Peggy Fechter. The Judgment of the District Court is REVERSED, with costs, and REMANDED, with directions; but the mandate stayed for 180 days. The above is in accordance with the decision of this court entered on this date. (Attachments: # 1 Certified Final Judgment, # 2 Opinion, # 3 Rehearing Order, # 4 Bill of Costs 1, # 5 Bill of Costs 2)(VM, ilcd) (Entered: 07/09/2013) |
| 07/09/2013 | 51 | MOTION to Dismiss for Lack of Jurisdiction *(moot)* by Defendants Hiram Grau, Lisa Madigan. Responses due by 7/26/2013 (Triebel, Karl) (Entered: 07/09/2013) |
| 07/10/2013 | | TEXT ORDER: Plaintiffs are ordered to file a response to Defendants' Motion to Dismiss as Moot 51 . Plaintiffs shall file the response on or before July 15, 2013. Entered by Judge Sue E. Myerscough on 7/10/2013. (VM, ilcd) (Entered: 07/10/2013) |
| 07/10/2013 | 52 | Consent MOTION for Extension of Time to File *Motion for Attorneys Fees* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 7/29/2013 (Jensen, David) (Entered: 07/10/2013) |
| 07/11/2013 | | TEXT ORDER: Plaintiffs' Agreed Motion to EXTEND Time for Filing Request for Attorney's Fees 52 is GRANTED. Plaintiffs shall have until on or before September 11, 2013 to file the Request. Entered by Judge Sue E. Myerscough on 7/11/2013. (VM, ilcd) (Entered: 07/11/2013) |
| 07/15/2013 | 53 | RESPONSE to Motion re 51 MOTION to Dismiss for Lack of Jurisdiction *(moot)* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 07/15/2013) |
| 07/16/2013 | 54 | MOTION for Leave to File *Reply Instanter* by Defendants Hiram Grau, Lisa Madigan. Responses due by 8/2/2013 (Attachments: # 1 Proposed Reply)(Triebel, Karl) (Entered: 07/16/2013) |
| 07/17/2013 | | TEXT ORDER: Defendants' Motion for Leave to File Reply Instanter 54 is GRANTED. Entered by Judge Sue E. Myerscough on 7/17/2013. (VM, ilcd) (Entered: 07/17/2013) |
| 07/17/2013 | 55 | Defendants' REPLY in Support of Motion re 51 MOTION to Dismiss for Lack of Jurisdiction *(moot)* filed by Defendants Hiram Grau, Lisa Madigan. (VM, ilcd) (Entered: 07/17/2013) |
| 09/03/2013 | 56 | Consent MOTION for Extension of Time to File *Petition for Attorney's Fees (Agreed)* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 9/20/2013 (Sigale, David) (Entered: 09/03/2013) |

| | | |
|---|---|---|
| 09/05/2013 | | TEXT ORDER: The Parties' Agreed Motion To Extend Time For Filing Request for Attorney's Fees 56 is GRANTED. Any request for attorney's fees shall be filed within 40 days after the mandate has issued from the Seventh Circuit in Shepard v. Madigan (13−2661). Entered by Judge Sue E. Myerscough on 9/05/2013. (VM, ilcd) (Entered: 09/05/2013) |
| 10/09/2013 | 57 | OPINION (See Written Opinion): Defendants' Motion to Dismiss as Moot (d/e 51 ) is DENIED. Plaintiffs shall file any request for attorney's fees pursuant to 42 U.S.C. § 1988 within 40 days after issuance of the mandate from the Seventh Circuit in Shepard v. Madigan, 13−2661. Any brief filed on or before this deadline shall address any award of costs and fees in this case. This matter is set for status conference on October 21, 2013 at 1:30 p.m. Entered by Judge Sue E. Myerscough on 10/09/2013. (VM, ilcd) (Entered: 10/10/2013) |
| 10/21/2013 | | Minute Entry for proceedings held before Judge Sue E. Myerscough: STATUS CONFERENCE held on 10/21/2013. Attorney David Sigale present on behalf of Plaintiffs. Attorneys Terrence Corrigan and Karen McNaught, Office of the Illinois Attorney General, present on behalf of Defendants. Status discussed. Positions stated. Order to enter. Additional Status Conference set for 4/21/2014 at 1:30 PM by telephone from Springfield (court will place call) before Judge Sue E. Myerscough. (Tape #SP−1: 1:32 PM.) (DM, ilcd) (Entered: 10/22/2013) |
| 10/22/2013 | | TEXT ORDER: The Court will defer entering judgment in this case. If the parties are unable to agree on attorney's fees and costs, Plaintiffs shall submit a brief on this issue not more than forty days after the Seventh Circuit issues an Opinion in Shepard v. Madigan. Following any submission from Plaintiffs, the Court will enter a scheduling order regarding Defendants' response to Plaintiffs' submission. Entered by Judge Sue E. Myerscough on 10/22/13. (CC, ilcd) (Entered: 10/22/2013) |
| 11/07/2013 | | TEXT ORDER: Plaintiffs shall file a memorandum on the issue of attorney's fees and costs on or before December 16, 2013. Defendants shall file any Response on or before December 30, 2013. At this time, the Court does not believe that a Reply to the Response is necessary. The Court will notify Plaintiffs if a Reply becomes necessary. Furthermore, the parties shall contact the Court immediately if the parties settle the issue of attorney's fees and costs. Entered by Judge Sue E. Myerscough on 11/07/2013. (VM, ilcd) (Entered: 11/07/2013) |
| 12/16/2013 | 58 | MOTION for Attorney Fees by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 1/2/2014 (Sigale, David) (Entered: 12/16/2013) |
| 12/16/2013 | 59 | MEMORANDUM in Support re 58 MOTION for Attorney Fees filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit A − McDonald final fee Order, # 2 Exhibit B − NRA separate statement, # 3 Exhibit C − NLJ firmwide, # 4 Exhibit D − NLJ partners, # 5 Exhibit E − NLJ associates, # 6 Exhibit F − Gura time statement, # 7 Exhibit H − Sigale time statement, # 8 Exhibit K − Sigale time statement)(Sigale, David) (Entered: 12/16/2013) |

| 12/16/2013 | 60 | AFFIDAVIT re 59 Memorandum in Support of Motion,, *(Declaration of Alan Gura)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 12/16/2013) |
|---|---|---|
| 12/17/2013 | 61 | AFFIDAVIT *(Declaration of David Jensen)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 12/17/2013) |
| 12/17/2013 | 62 | AFFIDAVIT re 59 Memorandum in Support of Motion,, *(Declaration of David G. Sigale)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit I − Fee Order in Winbigler v WCHA, # 2 Exhibit J − Fee Order in Nino de Rivera Lajous v Sankey)(Sigale, David) (Entered: 12/17/2013) |
| 12/17/2013 | 63 | AFFIDAVIT in Support re 58 MOTION for Attorney Fees *of David D. Jensen, Esq.* filed Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit 1)(Jensen, David) (Entered: 12/17/2013) |
| 12/17/2013 | 64 | Exhibit re 59 Memorandum in Support of Motion,, *(Group G − Cost Receipts)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit Group G − Receipt − Case Filing Fee, # 2 Exhibit Group G − Receipt − Service of Process, # 3 Exhibit Group G − Receipt − Shipping, # 4 Exhibit Group G − Receipt − Hotel, # 5 Exhibit Group G − Receipt − Copy and Parking)(Sigale, David) (Entered: 12/17/2013) |
| 12/17/2013 | 65 | Exhibit re 58 MOTION for Attorney Fees *(Proposed Order)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 12/17/2013) |
| 12/30/2013 | 66 | MOTION for Leave to File *to Conduct Discovery* by Defendants Hiram Grau, Lisa Madigan. Responses due by 1/16/2014 (McNaught, Karen) (Entered: 12/30/2013) |
| 12/30/2013 | 67 | MOTION for Extension of Time to File *Response to Motion for Attorneys Fees* 58 by Defendants Hiram Grau, Lisa Madigan. Responses due by 1/16/2014 (McNaught, Karen) (Entered: 12/30/2013) |
| 01/02/2014 | | TEXT ORDER: Before the Court are Defendants Lisa Madigan's and Hiram Grau's Motion for Enlargement of Time to file a Response to Plaintiffs' request for attorney's fees and costs and Motion for Leave to Conduct Discovery. Defendants' Motion for Enlargement of Time 67 is GRANTED. Defendants have until on or before May 5, 2014 to file a Response to Plaintiffs' request for attorney's fees and costs. Defendants' Motion to Conduct Discovery 66 is also GRANTED. Defendants SHALL be allowed to conduct discovery limited to interrogatories and, if necessary, depositions of Plaintiffs' counsel on the issue of fees and costs. Entered by Judge Sue E. Myerscough on 1/02/2014. (VM, ilcd) (Entered: 01/02/2014) |
| 01/02/2014 | 68 | MOTION for Reconsideration *of Order of 01/02/2014* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 1/21/2014 (Attachments: # 1 Exhibit Order of 01/02/2014)(Sigale, David) (Entered: 01/02/2014) |

| | | |
|---|---|---|
| 01/07/2014 | | TEXT ORDER: On December 30, 2013, Defendants Lisa Madigan and Hiram Grau filed a Motion for Leave to Conduct Discovery 66 and a Motion for Extension of Time to File a Response to Plaintiff's Request for Attorney's Fees and Costs 67 . On January 2, 2014, the Court GRANTED both Motions in an Order that stated Defendants may conduct limited discovery to include interrogatories and, if necessary, depositions of Plaintiffs' counsel. On January 2, 2014, Plaintiffs filed a Motion for Reconsideration of the Court's January 2, 2014 Order 68 . The Court DENIES Plaintiffs' Motion 68 . After reviewing the materials submitted by Plaintiffs regarding costs and fees, the Court determined prior to issuing the January 2, 2014 Order that limited discovery is warranted. Specifically, this case never proceeded beyond the preliminary injunction stage and involved little or no discovery. The Court recognizes that the parties did litigate this matter on appeal, which generated additional fees and costs. However the more than $200,000 in fees and costs that Plaintiffs have requested is a substantial sum. For these reasons and because some fees and costs reported to the Court are concerning, the Court finds that Defendants may serve interrogatories on Plaintiffs' counsel and, if necessary, depose those attorneys. The Court recognizes that this limited discovery will prolong the case and generate additional fees. The Court, however, has an obligation under 28 U.S.C. § 1988 to determine the reasonable fees and costs in this matter and whether to award Plaintiffs those fees and costs. Moreover, Defendants have an obligation to Illinois citizens to ensure that, if any fees and costs are awarded in this case, those fees and costs reasonably reflect the work performed by Plaintiffs' counsel. Accordingly, limited discovery will further the Court's and Defendants' obligations while ensuring that the issues are resolved quickly and correctly. Plaintiffs' Motion 68 is DENIED.. Entered by Judge Sue E. Myerscough on 1/07/2014. (VM, ilcd) (Entered: 01/07/2014) |
| 01/22/2014 | 69 | NOTICE of Supplemental Authority (Attachments: # 1 Exhibit Order in Shepard v. Madigan)(Sigale, David) (Entered: 01/22/2014) |
| 02/12/2014 | | TEXT ORDER: Pursuant to instructions from Chief Judge James E. Shadid, the assignment of this case to Magistrate Judge Byron G. Cudmore is withdrawn due to his resignation. The district judge assigned to this case will handle all matters until a new magistrate judge is appointed. Entered by Chief Judge James E. Shadid on 2/11/2014. (MC, ilcd) (Entered: 02/12/2014) |
| 03/26/2014 | | TEXT ORDER: Pursuant to instructions from Chief Judge James E. Shadid, this case is now referred to Magistrate Judge Tom Schanzle−Haskins due to his appointment as U.S. Magistrate Judge for the Central District of Illinois. Entered by Chief Judge James E. Shadid on 3/26/14. (DK, ilcd) (Entered: 03/26/2014) |
| 04/21/2014 | | Minute Entry for proceedings held before Judge Sue E. Myerscough: TELEPHONE STATUS CONFERENCE held on 04/21/2014. Attorneys David Jensen and David Sigale present on behalf of Plaintiffs. Attorneys Terrence Corrigan and Karen McNaught, Office of the Illinois Attorney General, present on behalf of Defendants. Discussion held as to status of pending Motion for Attorney Fees 58 . Hearing adjourned. (Tape #SP−I: 1:34 PM.) (DM, ilcd) (Entered: 04/21/2014) |
| 05/05/2014 | 70 | RESPONSE to Motion re 58 MOTION for Attorney Fees filed by Defendants |

| | | |
|---|---|---|
| | | Hiram Grau, Lisa Madigan. (Attachments: #_1 Exhibit 1−10)(McNaught, Karen) (Entered: 05/05/2014) |
| 05/05/2014 | 71 | NOTICE *of Certification of Compliance with Local Rule 7.1* (Corrigan, Terence) (Entered: 05/05/2014) |
| 05/05/2014 | 72 | MOTION to Dismiss *Renewed* by Defendants Hiram Grau, Lisa Madigan. Responses due by 5/22/2014 (Corrigan, Terence) (Entered: 05/05/2014) |
| 05/05/2014 | 73 | MEMORANDUM in Support re_72 MOTION to Dismiss *Renewed* filed by Defendants Hiram Grau, Lisa Madigan. (Corrigan, Terence) (Entered: 05/05/2014) |
| 05/05/2014 | 74 | NOTICE *of Certification of Compliance with Local Rule 7.1 (Amended)* re_70 Response to Motion (Corrigan, Terence) (Entered: 05/05/2014) |
| 05/06/2014 | | TEXT ORDER: Plaintiffs' oral motion for leave to file a reply to Defendants' Response to Plaintiff's Motion for Attorney Fees (d/e_70 ), which Defendants do not oppose, is GRANTED. Plaintiff is directed to file its reply on or before May 27, 2014. Entered by Judge Sue E. Myerscough on 5/06/2014. (VM, ilcd) (Entered: 05/06/2014) |
| 05/14/2014 | 75 | MOTION to Withdraw as Attorney , MOTION that Former Assistant Attorney General Sigale be Removed from the Service List by Defendants Hiram Grau, Lisa Madigan. Responses due by 6/2/2014 (McNaught, Karen) (Entered: 05/14/2014) |
| 05/14/2014 | 76 | MOTION to Withdraw_75 MOTION to Withdraw as Attorney MOTION that Former Assistant Attorney General Sigale be Removed from the Service List by Defendants Hiram Grau, Lisa Madigan. Responses due by 6/2/2014 (McNaught, Karen) (Entered: 05/14/2014) |
| 05/14/2014 | 77 | MOTION to Withdraw *former Assistant Attorney General David Andrew Simpson as co−counsel* by Defendants Hiram Grau, Lisa Madigan. Responses due by 6/2/2014 (McNaught, Karen) (Entered: 05/14/2014) |
| 05/20/2014 | | TEXT ORDER by Magistrate Judge Tom Schanzle−Haskins: Motion to Withdraw Document 75_76 ALLOWED. Motion_75 WITHDRAWN. Motion to Withdraw_77 ALLOWED. Attorney David Andrew Simpson is terminated as counsel for Defendants in this cause. (LB, ilcd) (Entered: 05/20/2014) |
| 05/20/2014 | 78 | MEMORANDUM in Opposition re_72 MOTION to Dismiss *Renewed* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 05/20/2014) |
| 05/27/2014 | 79 | Consent MOTION for Extension of Time to File Response/Reply as to_70 Response to Motion by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 6/13/2014 (Jensen, David) (Entered: 05/27/2014) |
| 05/27/2014 | | TEXT ORDER: Plaintiff's Consent Motion for Extension of Time to File Response/Reply (d/e_79 ) is GRANTED. Plaintiff is directed to file its reply on or before June 3, 2014. Entered by Judge Sue E. Myerscough on 5/27/2014. (VM, ilcd) (Entered: 05/27/2014) |

| | | | |
|---|---|---|---|
| 06/03/2014 | 80 | | REPLY to Response to Motion re 58 MOTION for Attorney Fees filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Jensen, David) (Entered: 06/03/2014) |
| 06/04/2014 | 81 | | AFFIDAVIT in Support re 58 MOTION for Attorney Fees *and of Reply Brief in Support* 80 filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit Answers to Interrogatories, # 2 Exhibit Answers to Requests for Production, # 3 Exhibit Supplemental Answers to Interrogatories)(Sigale, David) (Entered: 06/04/2014) |
| 06/04/2014 | 82 | | AFFIDAVIT in Support re 58 MOTION for Attorney Fees *and Reply Brief in Support* 80 filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit Order in Jackson v, Eden, # 2 Exhibit Order in Pot v. Witt, # 3 Exhibit Answers to Interrogatories, # 4 Exhibit Answers to Interrogatories (Supplemental), # 5 Exhibit Answers to Interrogatories (Second Supplemental))(Sigale, David) (Entered: 06/04/2014) |
| 06/04/2014 | 83 | | AFFIDAVIT in Support re 58 MOTION for Attorney Fees *Supplemental Declaration of David Jensen* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Jensen, David) (Entered: 06/04/2014) |
| 07/01/2014 | 84 | | MOTION for Sanctions *(28 U.S.C. 1927)* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 7/18/2014 (Sigale, David) (Entered: 07/01/2014) |
| 07/01/2014 | 85 | | MEMORANDUM in Support re 84 MOTION for Sanctions *(28 U.S.C. 1927)* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 07/01/2014) |
| 07/01/2014 | 86 | | MOTION for Sanctions *(28 U.S.C. 1927) (Corrected)* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 7/18/2014 (Sigale, David) (Entered: 07/01/2014) |
| 07/01/2014 | 87 | | MEMORANDUM in Support re 86 MOTION for Sanctions *(28 U.S.C. 1927) (Corrected)* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 07/01/2014) |
| 07/11/2014 | 88 | | MOTION for Extension of Time to File Response/Reply as to 86 MOTION for Sanctions *(28 U.S.C. 1927) (Corrected)* by Defendants Hiram Grau, Lisa Madigan. Responses due by 7/28/2014 (Corrigan, Terence) (Entered: 07/11/2014) |
| 07/14/2014 | | | TEXT ORDER: Defendant's Motion for Extension of Time to File Response/Reply (d/e 88 ) is GRANTED. Plaintiff's response or reply is due on or before Friday, July 25, 2014. Entered by Judge Sue E. Myerscough on 7/14/2014. (VM, ilcd) (Entered: 07/14/2014) |

| 07/17/2014 | 89 | | Exhibit re 80 Reply to Response to Motion *for Section 1988 Attorney's Fees (Notice of Supplemental Authority)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit Unopposed Motion for Attorneys Fees in Illinois Ass'n. of Firearms Retailers v. City of Chicago, # 2 Exhibit Joint Fee Statement in Illinois Ass'n. of Firearms Retailers v. City of Chicago, # 3 Exhibit Fee Order in Illinois Ass'n. of Firearms Retailers v. City of Chicago)(Sigale, David) (Entered: 07/17/2014) |
| 07/25/2014 | 90 | | RESPONSE to Motion re 86 MOTION for Sanctions *(28 U.S.C. 1927) (Corrected)* filed by Defendants Hiram Grau, Lisa Madigan. (Corrigan, Terence) (Entered: 07/25/2014) |
| 07/28/2014 | 91 | | Response by Hiram Grau, Lisa Madigan re 89 Exhibit,, *Notice of Supplemental Authority*. (Corrigan, Terence) (Entered: 07/28/2014) |
| 08/20/2014 | 92 | | NOTICE of Change of Address by David G Sigale (Sigale, David) (Entered: 08/20/2014) |
| 09/24/2014 | 93 | | Exhibit re 59 Memorandum in Support of Motion,, *(Supplemental Declaration of Alan Gura)* by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Sigale, David) (Entered: 09/24/2014) |
| 10/07/2014 | 94 | | NOTICE *of Supplemental Authority* re 59 Memorandum in Support of Motion,, (Attachments: # 1 Exhibit A − Court decision in JVLHC LLC v. Henderson)(Sigale, David) (Entered: 10/07/2014) |
| 11/21/2014 | 95 | | AFFIDAVIT in Support re 58 MOTION for Attorney Fees *Supplemental Declaration of David Jensen* filed by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit Supplemental Interrogatory Response)(Jensen, David) (Entered: 11/21/2014) |
| 11/24/2014 | 96 | 20 | OPINION (See Written Opinion): For the forgoing reasons, Plaintiffs' Motion for Attorney's Fees (d/e 58 ) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Attorneys are entitled to attorney's fees totaling $153,871.00. Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29. Plaintiffs' Motions for Sanctions (d/e 84 ; d/e 86 ) are DENIED. Defendants' Motion to Dismiss Renewed (d/e 72 ) is GRANTED. Under Federal Rule of Civil Procedure 54(d)(2)(B), any supplemental fee petition in this case shall be filed no later than 14 days after the entry of judgment. The Court will treat liberally any joint motion for extension of time to file a supplemental fee petition so that the parties may resolve the issue amicably. This case is CLOSED.IT IS SO ORDERED. Entered by Judge Sue E. Myerscough on 11/24/2014. (VM, ilcd) (Entered: 11/24/2014) |
| 11/24/2014 | 97 | 83 | JUDGMENT: Defendant's Motion to Dismiss Renewed (d/e 72) is Granted. Case Closed. (VM, ilcd) (Entered: 11/24/2014) |
| 12/02/2014 | 98 | | MOTION for Extension of Time to File *Petition for Supplemental Attorney's Fees (Unopposed)* by Plaintiffs Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Responses due by 12/19/2014 (Sigale, David) (Entered: 12/02/2014) |

| 12/05/2014 | | | TEXT ORDER: Plaintiffs' Unopposed Motion for Extension of Time 98 is GRANTED. Plaintiffs are DIRECTED to file their supplemental fee petition, if any, on or before January 14, 2015. Entered by Judge Sue E. Myerscough on 12/5/2014. (GL, ilcd) (Entered: 12/05/2014) |
|---|---|---|---|
| 12/08/2014 | 99 | 18 | NOTICE OF APPEAL as to 96 Order on Motion for Attorney Fees, Order on Motion to Dismiss, Order on Motion for Sanctions,,, Order Dismissing Case,,,,,,,,,,,,,,,,,, by Peggy Fechter, Charles Hooks, Illinois Carry, Jon Maier, Michael Moore, Second Amendment Foundation, Inc.. Filing fee $ 505, receipt number 0753−1964501. (Sigale, David) (Entered: 12/08/2014) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 3:11-CV-3134 |
| LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiffs MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS CARRY hereby appeal to the United States Court of Appeals for the Seventh Circuit from the Opinion of November 24, 2014, on Plaintiffs' motion for attorney fees (Dkt. 96) and from the Judgment entered thereon (Dkt. 97).

Dated: December 8, 2014

Respectfully submitted,

_____/s/ David G. Sigale_____

David D. Jensen
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, NY 10038
212.380.6615
david@djensenpllc.com

David G. Sigale (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

Attorneys for Plaintiffs

<u>**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**</u>

The undersigned certifies that:

1.     On December 8, 2014, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


       /s/ David G. Sigale       
One of the Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 11-cv-03134 |
| LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on the Motion for Preliminary and/or Permanent Injunction (the "Injunction Motion") of Plaintiffs Michael Moore, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., and Illinois Carry.  See d/e 13.  The Court also considers Defendants Lisa Madigan and Hiram Grau's Motion to

Dismiss.  <u>See</u> d/e 24.  This Court finds that the Illinois "Unlawful Use of Weapons" and "Aggravated Unlawful Use of a Weapon" statutes do not violate Plaintiffs' Second Amendment rights.  The United States Supreme Court and the Seventh Circuit have recognized only a Second Amendment core individual right to bear arms inside the home.  Further, even if this Court recognized a Second Amendment right to bear arms outside of the home and an interference with that right, the statutes nonetheless survive constitutional scrutiny.  Therefore, Plaintiffs cannot show a likelihood of success on the merits of their claim and thus cannot succeed on the Injunction Motion.  For reasons further discussed below, the Injunction Motion is DENIED and the Motion to Dismiss is GRANTED.

## I.  BACKGROUND

On May 19, 2011, Plaintiffs filed a one-count Amended Complaint alleging that the Illinois Unlawful Use of Weapons ("UUW") statute (720 ILCS 5/24-1) and the Aggravated Unlawful Use of a Weapon ("AUUW") statute (720 ILCS 5/24-1.6) violate the Second Amendment.

2

Specifically, Plaintiffs allege that 720 ILCS 5/24-1(a)(4), 720 ILCS 5/24-1(a)(10), and 720 ILCS 5/24-1.6(a) are unconstitutional as applied because the statutes prohibit the carry of loaded and operable firearms in public and thereby violate Plaintiffs' rights under the Second Amendment as recognized by <u>District of Columbia v. Heller</u>, 554 U.S. 570, 592 (2008), and made applicable to the States by <u>McDonald v. Chicago</u>, 130 S. Ct. 3020, 3026 (2010).  Plaintiffs argue that the Second Amendment, as interpreted by the Supreme Court, allows Plaintiffs to carry firearms, concealed or otherwise, in public.

Plaintiffs first challenge the Illinois "Unlawful Use of Weapons" statute, 720 ILCS 5/24-1, which criminalizes the carrying or possession of a firearm outside of the home except under certain circumstances.  The statute provides, in pertinent part:

> (a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> * * *
>
> > (4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol,

3

revolver, stun gun or taser or other firearm, except that
this subsection (a) (4) does not apply to or affect
transportation of weapons that meet one of the
following conditions:

> (i) are broken down in a non-functioning state; or
> (ii) are not immediately accessible; or
> (iii) are unloaded and enclosed in a case, firearm
> carrying box, shipping box, or other container by a
> person who has been issued a currently valid
> Firearm Owner's Identification Card; or . . .
>
> **\* \* \***

(10) Carries or possesses on or about his person, upon
any public street, alley, or other public lands within the
corporate limits of a city, village or incorporated town,
except when an invitee thereon or therein, for the
purpose of the display of such weapon or the lawful
commerce in weapons, or except when on his land or in
his own abode, legal dwelling, or fixed place of business,
or on the land or in the legal dwelling of another person
as an invitee with that person's permission, any pistol,
revolver, stun gun or taser or other firearm. . . .

(b) Sentence.  A person convicted of a violation of subsection
24-1(a)(1) through (5), subsection 24-1(a)(10), subsection
24-1(a)(11), or subsection 24-1(a)(13) commits a Class A
misdemeanor. . . .

Plaintiffs also challenge the Illinois "Aggravated Unlawful Use of a

Weapon" statute, 720 ILCS 5/24-1.6, which criminalizes the carrying or

possession of a firearm outside of the home when the firearm is loaded

4

and accessible or when the firearm is unloaded but ammunition is

immediately accessible.  The statute provides, in pertinent part:

> (a) A person commits the offense of aggravated unlawful use
> of a weapon when he or she knowingly:
>
> > (1) Carries on or about his or her person or in any
> > vehicle or concealed on or about his or her person except
> > when on his or her land or in his or her abode, legal
> > dwelling, or fixed place of business, or on the land or in
> > the legal dwelling of another person as an invitee with
> > that person's permission, any pistol, revolver, stun gun
> > or taser or other firearm; or
> >
> > (2) Carries or possesses on or about his or her person,
> > upon any public street, alley, or other public lands
> > within the corporate limits of a city, village or
> > incorporated town, except when an invitee thereon or
> > therein, for the purpose of the display of such weapon or
> > the lawful commerce in weapons, or except when on his
> > or her own land or in his or her own abode, legal
> > dwelling, or fixed place of business, or on the land or in
> > the legal dwelling of another person as an invitee with
> > that person's permission, any pistol, revolver, stun gun
> > or taser or other firearm; and
> >
> > (3) One of the following factors is present:
> >
> > > (A) the firearm possessed was uncased, loaded and
> > > immediately accessible at the time of the offense;
> > > or
> > > (B) the firearm possessed was uncased, unloaded
> > > and the ammunition for the weapon was

5

immediately accessible at the time of the offense

\* \* \*

(d) Sentence.
> (1) Aggravated unlawful use of a weapon is a Class 4
> felony; a second or subsequent offense is a Class 2
> felony for which the person shall be sentenced to a term
> of imprisonment of not less than 3 years and not more
> than 7 years.

Plaintiffs claim that the UUW and AUUW statutes criminalize the carrying of a functional firearm on one's person in public and, therefore, violate their Second Amendment right to bear arms.

On July 7, 2011, Plaintiffs filed the Injunction Motion.  Plaintiffs argue the Supreme Court ruled in Heller, 554 U.S. at 592, that the Second Amendment "guarantee[s] the right to possess and carry weapons in case of confrontation."  See Pls.' Mem. Supp. Prelim. and/or Perm. Inj. (d/e 14) at 1.  Plaintiffs cite McDonald, 130 S. Ct. at 3026, for the proposition that the Supreme Court incorporated that right "fully" against the States.  Plaintiffs further contend that, because Illinois' prohibitions on the carrying of guns necessarily violates Plaintiffs' Second Amendment rights, an injunction must be issued against Defendants

6

according to <u>Ezell v. City of Chicago</u>, 651 F.3d 684 (7th Cir. 2011).

At the August 4, 2011 hearing on the Injunction Motion, Defense counsel stated that they do not contest Plaintiffs' assertion that Lisa Madigan and Hiram Grau are properly named as Defendants.  <u>See</u> Prelim. Inj. Hr'g Tr. (d/e 37) at 33-34, Aug. 4, 2011.  Additionally, Defendants offered as evidence reports about the efficacy of firearms control.  <u>Id.</u> at 4.  Plaintiffs objected to the reports' relevance under Federal Rule of Evidence 401, and this Court reserved ruling.  <u>Id.</u>  This Court now finds that the reports offered by Defendants at the August 4, 2011 hearing are relevant to the Injunction Motion in that they affect this Court's analysis of whether the UUW and AUUW statutes survive constitutional scrutiny.  Therefore, the Court accepts the reports into evidence and now rules on the remaining issues.

## II.  JURISDICTION & VENUE

The federal question posed by Plaintiffs' claimed violation of their Second Amendment rights gives this Court subject matter jurisdiction.  <u>See</u> 28 U.S.C. § 1331.  Personal jurisdiction and venue requirements are

7

satisfied because the relevant acts occurred in this judicial district.  <u>See</u>

<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)

(stating that personal jurisdiction exists where a defendant "purposefully

avail[ed] [himself or herself] of the privilege of conducting activities" in

the forum state); 28 U.S.C. §1391(b) (providing that venue in non-

diversity cases is proper in a judicial district where any defendant resides,

if all defendants reside in the same State).

## III.  STANDING

"Standing exists when the plaintiff suffers an actual or impending

injury, no matter how small; the injury is caused by the defendant's acts;

and a judicial decision in the plaintiff's favor would redress the injury."

<u>See</u> <u>Ezell</u>, 651 F.3d at 695 (quoting <u>Bauer v. Shepard</u>, 620 F.3d 704, 708

(7th Cir. 2010)) (internal quotation marks omitted).  By asserting that

the Second Amendment gives them a right to carry firearms in public and

that Illinois' UUW and AUUW statutes deprive them of that right, the

four individual Plaintiffs have clearly alleged injury and causation.

Because a decision enjoining enforcement of the UUW and AUUW

statutes would redress Plaintiffs' alleged injury, Plantiffs have also satisfied the requirement that a judicial decision in their favor would redress their injury.

Just as the four individual Plaintiffs have standing to seek injunctive relief, so, too, do associational Plaintiffs Second Amendment Foundation, Inc., and Illinois Carry.  Second Amendment Foundation, Inc. and Illinois Carry have members who assert that they would carry firearms in Illinois but for the UUW and AUUW statutes.  These two organizations meet the requirements for associational standing because: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." <u>Ezell</u>, 651 F.3d at 696 (citing <u>United Food & Commercial Workers Union Local 751 v. Brown Group</u>, 517 U.S. 544, 553 (1996); <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 U.S. 333, 343 (1977); <u>Disability Rights Wisconsin v. Walworth</u>

County Board of Supervisors, 522 F.3d 796, 801-02 (7th Cir. 2008)).

## IV. MOTION FOR PRELIMINARY INJUNCTION

This Court first considers Plaintiffs' Injunction Motion, rather than Defendants' Motion to Dismiss, because the Parties have more fully briefed the constitutionality of the challenged statutes with respect to the Injunction Motion and presented oral argument on the Injunction Motion at the August 5, 2011 hearing.

Plaintiffs argue that the Supreme Court in Heller determined that individuals have a Second Amendment right to carry firearms, concealed or visible, in public and, therefore, the Illinois UUW and AUUW statutes violate the Second Amendment by prohibiting individuals from carrying functioning firearms in public. See Pls.' Mem. Supp. Prelim. and/or Perm. Inj. at 1-3 (citing Heller, 554 U.S. at 584; 720 ILCS 5/24-1; 720 ILCS 5/24-1.6). To prevent further violations of these alleged rights, Plaintiffs seek a preliminary injunction or, in the alternative, a permanent injunction.

A party seeking a preliminary injunction must initially demonstrate

that: (1) the claim has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) irreparable harm will result if preliminary relief is denied.  See <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008).  If the moving party fails to demonstrate any one of these three initial requirements, a court must deny the request for a preliminary injunction.  <u>Id.</u>  If, however, the moving party meets the initial threshold, the court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  <u>Id.</u>  In balancing the harm to each party, a court should also consider whether the preliminary injunction is in the public interest.  See <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Judge v. Quinn</u>, 612 F.3d 537, 546 (7th Cir. 2010).

## A. Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their Claim.

To establish a likelihood of success on the merits, Plaintiffs must

11

demonstrate that they have "some prospect of prevailing on the merits" of their claim.  Hoosier Energy Rural Electric Cooperative, Inc. v. John Hancock Life Insurance Co., 582 F.3d 721, 730 (7th Cir. 2009).  While the UUW and AUUW statutes do not completely ban firearm possession, these statutes prevent Plaintiffs from carrying firearms outside of their homes or places of business except when the firearm is non-functioning, not immediately accessible, or unloaded and enclosed in a case.  See 720 ILCS 5/24-1(a)(4).  Plaintiffs contend they are likely to prevail on their challenge to the UUW and AUUW statutes because the Second Amendment gives them the right to carry firearms—concealed or otherwise—outside of their homes.

In determining whether Plaintiffs are likely to succeed on the merits of their claim, this Court will follow the framework for considering Second Amendment challenges that the Seventh Circuit adopted in Ezell. See Ezell, 651 F.3d at 701 (noting that the Third, Fourth, and Tenth Circuits have adopted a similar framework); see also Justice v. Town of Cicero, No. 10-C-5331, 2011 WL 5075870, at *9 (N.D. Ill. Oct. 25,

12

2011) (applying the framework adopted in Ezell).

First, "the threshold inquiry in some Second Amendment cases will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" Ezell, 651 F.3d at 701. If Defendants can establish that the activity regulated by the challenged law is not within the scope of the Second Amendment, then "the activity is categorically unprotected, and the law is not subject to further Second Amendment review." Id. at 702-03.

If the regulated activity is protected, then the Court will engage in a "second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." Id. at 703. In the second inquiry, the Court must determine what level of constitutional scrutiny to apply. "[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." Id.[1]

---

[1] In Ezell, the court stated that its two-step approach to Second Amendment challenges did not undermine the court's earlier decisions in United States v. Skoien, 614 F.3d 638, 643 (7th Cir. 2010), or United States v. Williams, 616 F.3d 685, 691-93 (7th Cir. 2010), "both of which touched on the historical 'scope' question before applying a form of intermediate scrutiny." Ezell, 651 F.3d at 701.

Accordingly, this Court will first analyze whether the activity restricted by the UUW and AUUW statutes—carrying loaded, uncased, and immediately accessible firearms outside of one's home or place of business—is protected by the Second Amendment.

### 1.   The UUW and AUUW Statutes Do Not Restrict Activity Protected by the Second Amendment.

Plaintiffs argue that the Second Amendment protects a general right to carry guns that includes a right to carry operable guns in public. However, neither the United States Supreme Court nor any United States Court of Appeals has recognized such a right.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In <u>Heller</u>, the Supreme Court held that the Second Amendment "protects the right to keep and bear arms for the purpose of self-defense" and that a District of Columbia law that "banned the possession of handguns in the home" violated that right.  <u>McDonald</u>, 130 S. Ct. at 3021 (citing <u>Heller</u>, 554 U.S. 570).  Writing for the majority in <u>Heller</u>, Justice Scalia extensively

examined the text and historical background of the Second Amendment
and found that the Second Amendment "guarantee[s] the individual
right to possess and carry weapons in case of confrontation" unconnected
with service in a militia.  554 U.S. at 592.  However, the Court's
characterization of the right concluded with strong limiting language:
"Like most rights, the right secured by the Second Amendment is not
unlimited.  From Blackstone through the 19th-century cases,
commentators and courts routinely explained that the right was not a
right to keep and carry any weapon whatsoever in any manner
whatsoever and for whatever purpose."  Id. at 626.  For example, the
Court explained, "the majority of the 19th-century courts to consider the
question held that prohibitions on carrying concealed weapons were
lawful under the Second Amendment or state analogues."  Id.  The
Court further explained that although it did not undertake an
"exhaustive historical analysis" of the full scope of the Second
Amendment, "nothing in our opinion should be taken to cast doubt on
longstanding prohibitions on the possession of firearms by felons and the

mentally ill, or laws forbidding the carrying of firearms in sensitive places

such as schools and government buildings, or laws imposing conditions

and qualifications on the commercial sale of arms." Id. at 626-27

(stating that this list of "presumptively lawful regulatory measures" is not

intended to be exhaustive).  Finally turning to the District of Columbia

law at issue in the case, the Court concluded:

> In sum, we hold that the District's ban on handgun
> possession *in the home* violates the Second Amendment, as
> does its prohibition against rendering any lawful firearm *in
> the home* operable for purpose of immediate self-defense.
> Assuming that Heller is not disqualified from the exercise of
> Second Amendment rights, the District must permit him to
> register his handgun and must issue him a license to carry it
> *in the home*.

Heller, 554 U.S. at 635 (emphasis added).

The Supreme Court's holding in Heller is narrow: that the Second

Amendment gives qualified individuals (i.e. mentally competent persons

who are not felons) the right to possess lawful firearms "in the home" for

purposes of self-defense.  Id. at 626, 635.  The Court emphasized the

limited nature of its holding, stating that "whatever else [the Second

Amendment] leaves to future evaluation, it surely elevates above all other

16

interests the right of law-abiding, responsible citizens to use arms *in defense of hearth and home*." Id. at 635 (emphasis added).  The Seventh Circuit, in an en banc opinion, has stated that the language of Heller "warns readers not to treat Heller as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense.  What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open." Skoien, 614 F.3d at 640.

In McDonald, a plurality of the Supreme Court found that the right to possess a handgun in the home for self-defense recognized in Heller was applicable to the states through the Due Process Clause of the Fourteenth Amendment.  McDonald, 130 S. Ct. at 3050 ("In Heller, we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense . . . . We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller.").

17

Together, the <u>Heller</u> and <u>McDonald</u> opinions emphasize that the core of the Second Amendment right is the right of the individual to bear arms in the home for the purpose of self-defense.  Neither <u>Heller</u> nor <u>McDonald</u> recognizes a Second Amendment right to bear arms outside of the home.  To the contrary, the <u>Heller</u> Court specifically limited its holding to possession in the home and warned courts not to extend that holding beyond what the Court set out to establish.  <u>Heller</u>, 554 U.S. at 626-27, 635; <u>see also</u> <u>Skoien</u>, 614 F.3d at 640.

The Seventh Circuit has not specifically considered the question of whether the Second Amendment right articulated in <u>Heller</u> includes a general right to bear arms outside of the home.  Most recently, the court considered whether a city-wide ban on firing-range training, where such training was a prerequisite for lawful gun ownership, burdened the core of the Second Amendment right to possess firearms for self-defense in the home.  <u>See</u> <u>Ezell</u>, 651 F.3d at 689-90.  The court's finding that the ban burdened the core of the Second Amendment right was based on its reasoning that the ban, by effectively precluding lawful gun ownership,

severely interfered with "the right to keep and bear arms for defense of self, family, and home" articulated in <u>Heller</u>.  <u>Id.</u> at 704.  The court did not make a finding regarding the scope of the Second Amendment outside of the home.  However, the Seventh Circuit's characterization of the scope of that right in <u>Ezell</u> and <u>Skoien</u> supports the conclusion that the Second Amendment right, as recognized by the Supreme Court, does not extend outside of the home.  As noted earlier, the court in <u>Skoien</u> stated that the <u>Heller</u> decision set out a narrow holding: "that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense."  <u>Skoien</u>, 614 F.3d at 640.

In concluding that the Second Amendment right in <u>Heller</u> is limited to the right to bear arms in the home for self-defense, this Court notes that many courts in other jurisdictions have reached a similar conclusion regarding the <u>Heller</u> decision.  <u>See</u> <u>Piszczatoski v. Filko</u>, No. 10-06110, 2012 WL 104917, at *1 (D.N.J. Jan. 12, 2012) (finding that the Second Amendment does not include a general right to carry handguns outside the home); <u>Kachalsky v. Cacace</u>, No. 10-cv-5413, 2011 WL 3962550, at

*19, *23 (S.D.N.Y. Sept. 2, 2011) (stating that the <u>Heller</u> Court's "emphasis on the Second Amendment's protection of the right to keep and bear arms for the purpose of 'self-defense in the home' permeates the Court's decision and forms the basis for its holding" and finding that both concealed and open carry of firearms in public are "outside the core Second Amendment concern articulated in <u>Heller</u>: self-defense in the home"); <u>Osterweil v. Bartlett</u>, No. 1:09-cv-825, 2011 WL 1983340, at *6 (N.D.N.Y. May 20, 2011); <u>Gonzales v. Village of West Milwaukee</u>, No. 09-cv-0384, 2010 WL 1904977, at *4 (E.D. Wis. May 11, 2010) ("The Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home."); <u>Moreno v. N.Y. City Police Department</u>, No. 10-cv-6269, 2011 WL 2748652, at *3 (S.D.N.Y. May 7, 2011) (noting that "<u>Heller</u> has been narrowly construed, as protecting the individual right to bear arms for the specific purpose of self-defense within the home"); <u>United States v. Tooley</u>, 717 F. Supp. 2d 580, 596 (S.D. W. Va. 2010) ("[P]ossession of a firearm outside of the home or for purposes other than self-defense in the home are not within the 'core' of

20

the Second Amendment right as defined by <u>Heller</u>."); <u>People v. Aguilar</u>,
408 Ill. App. 3d 136, 143 (2011) ("[T]he decisions in <u>Heller</u> and
<u>McDonald</u> were limited to interpreting the [S]econd [A]mendment's
protection of the right to possess handguns in the home, not the right to
possess handguns outside the home."); <u>People v. Dawson</u>, 403 Ill. App.
3d 499, 508 (2010) ("[T]he <u>Heller</u> Court ultimately limited its holding
to the question presented—that the [S]econd [A]mendment right to bear
arms protected the right to possess a commonly used firearm, in the
home for self-defense purposes."); <u>Williams v. State</u>, 10 A.3d 1167, 1178
(Md. 2011) ("If the Supreme Court . . . meant its holding [in <u>Heller</u> and
<u>McDonald</u>] to extend beyond home possession, it will need to say so
more plainly."); <u>Little v. United States</u>, 989 A.2d 1096, 1101 (D.C.
2010) (holding that because the appellant was not in his home, he was
"outside of the bounds identified in <u>Heller</u>, <u>i.e.</u>, the possession of a
firearm in one's private residence for self-defense purposes"); <u>Mack v.
Unites States</u>, 6 A.3d 1224, 1236 (D.C. 2010) (stating that "<u>Heller</u> did
not endorse a right to carry weapons outside the home.  Nor has the

Court done so in its more recent decision in <u>McDonald</u>."); <u>State v.</u>
<u>Knight</u>, 218 P.3d 1177, 1189 (Kan. Ct. App. 2009) (reasoning that a
statute which criminalized the possession of a concealed firearm in public
was outside the province of the Second Amendment, because the
Supreme Court's decision in <u>Heller</u> "turned solely on the issue of
handgun possession in the home"); <u>but see</u> <u>People v. Mimes</u>, 953 N.E.2d
55, 73 (Ill. App. Ct. 2011) (finding that the Second Amendment right is
not limited to the home because the "inherent right to self-defense" that
is central to the <u>Heller</u> decision "does not disappear outside the home"
but, nonetheless, holding that the challenged Illinois AUUW statute
survives intermediate scrutiny and does not violate the Second
Amendment).

In addition to emphasizing that the core of the Second Amendment
right is the right to bear arms in the home for the purpose of self-defense,
the Supreme Court in <u>Heller</u> clearly affirmed the government's power to
regulate and restrict possession of firearms outside of the home.  <u>Heller</u>,
554 U.S. at 626-27 (approving of 19th-century prohibitions on carrying

concealed weapons and stating that "nothing in our opinion should be taken to cast doubt . . . on laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the qualifications on the commercial sale of arms").  The <u>Heller</u> Court's approval of 19th-century bans on concealed carry and other longstanding firearm regulations further indicates that <u>Heller</u> recognizes a Second Amendment right to bear arms that is specific to possession in the home for self-defense and does not extend to possession outside of the home.  <u>See</u> <u>id.</u>

The Seventh Circuit and other courts have applied the <u>Heller</u> Court's language to uphold various federal gun laws, including bans on gun possession by certain types of criminal offenders and bans on possession of certain types of weapons.  <u>See</u> <u>Skoien</u>, 614 F.3d at 639 (upholding 18 U.S.C. § 922(g)(9), which bans possession of firearms by a person convicted of a misdemeanor crime of domestic violence); <u>United States v. Yancey</u>, 621 F.3d 681, 682 (7th Cir. 2010) (upholding 18 U.S.C. § 922(g)(3), which bans possession of firearms by certain users of

unlawful controlled substances); <u>United States v. Williams</u>, 616 F.3d 685, 692-93 (7th Cir. 2010) (upholding 18 U.S.C. § 922(g)(1), which bans possession of firearms by a convicted felon); <u>see also</u> <u>United States v. Booker</u>, 644 F.3d 12, 13 (1st Cir. 2011) (upholding 18 U.S.C. § 922(g)(9)); <u>United States v. Chester</u>, 628 F.3d 673, 680 (4th Cir. 2010) (same); <u>United States v. Reese</u>, 627 F.3d 792, 800-01 (10th Cir. 2010) (upholding 18 U.S.C. § 922(g)(8), which bans possession of firearms by individuals subject to a domestic protection order); <u>United States v. Mazzarella</u>, 614 F.3d 85, 89 (3d Cir. 2010) (upholding 18 U.S.C. § 922(k), which bans possession of firearms with an obliterated serial number).

Relying on the <u>Heller</u> Court's implicit approval of 19th-century laws prohibiting concealed carry of weapons (<u>see</u> <u>Heller</u>, 554 U.S. at 626), many courts have held that laws restricting or banning concealed carry of weapons outside of the home do not encroach upon activity protected by the Second Amendment.  <u>See</u> <u>Kachalsky</u>, 2011 WL 3962550, at *23 (upholding New York Penal Law § 400.00(2)(f), which allows concealed

carry permits to be issued only "when proper cause exists" and finding

that both concealed and open carry of firearms in public are "outside the

core Second Amendment concern articulated in <u>Heller</u>: self-defense in the

home"); <u>United States v. Hart</u>, 726 F. Supp. 2d 56, 60 (D. Mass. 2011)

("<u>Heller</u> does not hold, nor even suggest, that concealed weapons laws are

unconstitutional."); <u>Richards v. County of Yolo</u>, No. 2:09-cv-01235,

2011 WL 1885641, at *3 (E.D. Cal. May 16, 2011) (upholding a county

ban on concealed carry because "the Second Amendment does not create

a fundamental right to carry a concealed weapon in public"); <u>Dorr v.</u>

<u>Weber</u>, 741 F. Supp. 2d 993, 1005 (N.D. Iowa 2010) (finding that "a

right to carry a concealed weapon under the Second Amendment has not

been recognized to date"); <u>Mack</u>, 6 A.3d at 1236 (stating that "<u>Heller</u> did

not endorse a right to carry weapons outside the home" and "did not

recognize a right to carry concealed weapons");  <u>Knight</u>, 218 P.3d at

1190 (concluding that the <u>Heller</u> Court considered concealed firearms

prohibitions to be "presumptively constitutional").

Moreover, in <u>Kachalsky v. Cacace</u>, the Southern District of New

York upheld New York's handgun licensing scheme, which allows issuance of a license to carry a handgun in public only after a licensing officer's discretionary determination that "proper cause exists for the issuance thereof," which New York state courts have interpreted to mean "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Kachalsky, 2011 WL 3962550, at *1 (quoting N.Y.P.L. § 400.00(2)(f)). The court held that the Second Amendment right defined in Heller does not extend to invalidate regulations such as N.Y.P.L. Section 400.00(2)(f). Kachalsky, 2011 WL 3962550, at *20. The court explained that "the language of Heller makes clear that the Court recognized 'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose,' 554 U.S. at 626, but rather a much narrower right—namely the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home,' id. at 635." Kachalsky, 2011 WL 3962550, at *20. The court further stated that "Heller's limiting language makes clear that the Supreme Court did not disturb its prior

ruling in <u>Robertson v. Baldwin</u>, 165 U.S. 275, 17 S. Ct. 326, 41 L. Ed. 715 (1897), where it 'recognized that the Second Amendment right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons.'" <u>Kachalsky</u>, 2011 WL 3962550, at *20 (quoting <u>Dorr</u>, 741 F. Supp. 2d at 1005).  Because New York's law did not interfere with the right of individuals to bear arms in the home for the purpose of self-defense, the court found that the law did not impose a burden on conduct falling within the scope of the Second Amendment and rejected the plaintiffs' challenge under the first prong of the two-prong Second Amendment analysis.  <u>Kachalsky</u>, 2011 WL 3962550, at *23.

Additionally, the District of New Jersey recently heard a similar constitutional challenge to a New Jersey law governing issuance of permits to carry handguns outside of one's home or place of business. <u>See</u> <u>Piszczatoski</u>, 2012 WL 104917, at *1.  The New Jersey law requires a permit applicant to demonstrate, among other things, a "justifiable need to carry a handgun," first to a police officer and then to a Superior

27

Court judge.  Piszczatoski, 2012 WL 104917, at *3.  The plaintiffs

argued that the law encroaches upon a fundamental right to carry

operable handguns for self-defense under the Second Amendment.  Id.

The court upheld the law, finding that "[t]he Handgun Permit Law does

not on its face burden protected conduct because the Second

Amendment does not include a general right to carry handguns outside

the home."  Piszczatoski, 2012 WL 104917, at *1.  The court reasoned

that Heller "repeatedly and specifically limited itself to the home," and

much of its reasoning "refers to the need for self-defense specifically in

the home."  Piszczatoski, 2012 WL 104917, at *7.  The court concluded:

"If the Supreme Court majority had intended to create a broader general

right to carry for self-defense outside the home, Heller would have done

so explicitly."  Id.

    This Court agrees with the Piszczatoski court's conclusion that the

Supreme Court in Heller and McDonald did not explicitly recognize a

general right to carry firearms in public.  The Heller Court's emphasis on

the right to bear arms "in defense of hearth and home" and the Court's

28

express approval of regulations prohibiting concealed carry of weapons in public reflect that the Court in <u>Heller</u> did not recognize a Second Amendment right to possess operable firearms in public.  <u>Heller</u>, 554 U.S. at 635 (stating that "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.").  Because the Supreme Court has not recognized such a right, the Illinois UUW and AUUW statutes' prohibition of carrying loaded, uncased, and immediately accessible firearms in public does not violate the Second Amendment as defined by the Supreme Court.  The UUW and AUUW statutes, because they permit home possession, do not interfere with the core of the Second Amendment right, which is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  <u>Heller</u>, 554 U.S. at 635.

Because Illinois' UUW and AUUW statutes do not interfere with possession of arms in the home, these statutes are distinguishable from the regulation challenged in <u>Ezell</u>.  In <u>Ezell</u>, the Seventh Circuit enjoined

the City of Chicago from enforcing a ban on live ammunition firing

ranges within the City where the City also mandated firing-range training

as a prerequisite to lawful gun ownership.  Ezell, 651 F.3d at 689-90.

The Ezell court found that because Heller and McDonald established

that the right to possess firearms for self-defense in one's home is a core

Second Amendment right, there is implicitly "a corresponding right to

acquire and maintain proficiency in [firearm] use."  See Ezell, 651 F.3d

at 704.  Because the range ban severely encroached on "an important

corollary to the meaningful exercise of the core right to possess firearms

for self-defense," the court applied a heightened scrutiny analysis and

concluded that the plaintiffs' Second Amendment claim had a strong

likelihood of success on the merits.  See Ezell, 651 F.3d at 708-10.

The ordinance challenged in Ezell implicated the core of the Second

Amendment right to possess firearms in the home for self-defense in a

way that the Illinois UUW and AUUW statutes do not.  The ordinance

in Ezell prohibited citizens from satisfying a prerequisite to lawful gun

ownership and, thereby, severely encroached upon the right to possess

guns for purposes of self-defense in the home guaranteed by <u>Heller</u>. <u>See</u>

<u>Ezell</u>, 651 F.3d at 708. By contrast, the instant UUW and AUUW

statutes do not limit possession of weapons for the purpose of self-

defense in the home and only restrict possession outside of the home

under limited circumstances. <u>See</u> 720 ILCS 5/24-1(a)(4), (10); 720 ILCS

5/24-1.6(a). Additionally, unlike the ordinance at issue in <u>Ezell</u>, neither

the UUW statute nor the AUUW statute burdens anything that could be

considered a necessary corollary to that right because the statutes do not,

for example, prevent qualified individuals from purchasing a firearm,

obtaining proficiency in firearm use, or transporting a firearm. <u>See</u> <u>Ezell</u>,

651 F.3d at 708-10. Therefore, the UUW and AUUW statutes do not

infringe upon the core Second Amendment right recognized by the

Supreme Court in <u>Heller</u>. <u>See</u> <u>Heller</u>, 554 U.S. at 635.

This Court finds further support for its conclusion in recent

decisions of the Illinois Appellate Court, which has also concluded that

<u>Heller</u> and <u>McDonald</u> affirm a Second Amendment right to bear arms in

the home but not outside of the home. <u>See</u> <u>People v. Williams</u>, No. 1-

31

09-1667, 2011 WL 6351861, at *4 (Ill. App. Ct. Dec. 15, 2011) (finding

that the AUUW statute "does not implicate the fundamental right

announced by <u>Heller</u> and . . . <u>McDonald</u>, the right to possess a loaded

handgun in the home for self-protection"); <u>Aguilar</u>, 408 Ill. App. 3d at

143; <u>Dawson</u>, 403 Ill. App. 3d at 508; <u>but see</u> <u>Mimes</u>, 953 N.E.2d at 73

(finding that the Second Amendment right as defined by <u>Heller</u> and

<u>McDonald</u> is not limited to the home but ultimately holding that the

AUUW statute's ban on the carrying of an uncased, loaded, and

accessible firearm in public nevertheless passed constitutional scrutiny).

The Illinois Appellate Court has held repeatedly that the Illinois UUW

and AUUW statutes do not violate the Second Amendment.  <u>See</u>

<u>Williams</u>, 2011 WL 6351861, at *2 (holding that the AUUW statute did

not violate the defendant's Second Amendment rights); <u>People v.</u>

<u>Montyce H.</u>, No. 1-10-1788, 2011 WL 5903448, at *5 (Ill. App. Ct.

Nov. 18, 2011) (same); <u>Mimes</u>, 953 N.E.2d at 77 (same); <u>People v. Ross</u>,

407 Ill. App. 3d 931, 939-40 (2011) (same); <u>Aguilar</u>, 408 Ill. App. 3d at

142-50 (same); <u>Dawson</u>, 403 Ill. App. 3d at 510 (holding that U.S.

Supreme Court cases "do not define the fundamental right to bear arms
to include activity barred by the AUUW statute").

This Court concludes that the Illinois UUW and AUUW statutes
do not infringe upon a core right protected by the Second Amendment.
Further, the Supreme Court has not recognized a right to bear firearms
outside the home and has cautioned courts not to expand on its limited
holding.  See Heller, 554 U.S. at 635 (holding only that a ban that
prohibits competent individuals from possessing operable handguns for
self-defense in their homes violated the Second Amendment).  Rather,
the Supreme Court has validated the government's prerogative to
implement firearm prohibitions.  See id. at 626-27 (stating that "nothing
in our opinion should be taken to cast doubt . . . on laws forbidding the
carrying of firearms in sensitive places such as schools and government
buildings, or laws imposing conditions on the qualifications on the
commercial sale of arms").  Firearm regulation is the prerogative of
legislatures, subject only to constitutional dictates judged by the courts.
The absence of any controlling authority which finds that the UUW or

AUUW statutes violate the Second Amendment prevents Plaintiffs from

showing any likelihood of success on the merits.

### 2.  The UUW and AUUW Statutes Survive Constitutional Scrutiny.

Alternatively, assuming, *arguendo*, that there is a right to bear arms

outside of the home, such a right is not a core Second Amendment right

as defined by the <u>Heller</u> Court, which defined the core of the right as the

right to bear arms in the home for self-defense.  <u>See</u> <u>Heller</u>, 554 U.S. at

635; <u>see also</u> <u>Skoien</u>, 614 F.3d at 640.  However, even if this Court were

to assume that such a right exists and that the UUW and AUUW

statutes interfere with that right, Plaintiffs would still be unable to show

a likelihood of success on the merits of their claim because the UUW and

AUUW statutes survive constitutional scrutiny.

This Court notes that the Supreme Court has not articulated the

appropriate level of scrutiny that courts must apply to Second

Amendment challenges, but the Supreme Court has indicated that

rational basis review is not appropriate.  <u>See</u> <u>Heller</u>, 554 U.S. at 629 n.

27 ("Obviously, [a rational basis] test could not be used to evaluate the

extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms.").  As discussed earlier, the Seventh Circuit has stated that the level of scrutiny to be applied "will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." Ezell, 651 F.3d at 703, 708.  The court explained that "laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified" than those placing a "severe burden" on the right. Ezell, 651 F.3d at 708.

The Seventh Circuit's approach explains why the court applied heightened, but "not quite strict," scrutiny in the Ezell decision but applied only intermediate scrutiny in the Skoien decision.  In Skoien, an en banc decision, an individual asserted that 18 U.S.C. § 922(g)(9) violated his Second Amendment right to bear arms because it barred him from possessing a weapon on account of his conviction for misdemeanor domestic violence.  Skoien, 614 F.3d at 639.  The court applied

intermediate scrutiny and upheld the law, finding that the goal of the law, "preventing armed mayhem," was an important governmental objective and the government had established a substantial relation between the statute and its objective.  <u>Skoien</u>, 614 F.3d at 641-42.  In <u>Ezell</u>, the Seventh Circuit enjoined the City of Chicago from enforcing a ban on live ammunition firing ranges within the City where the City also mandated firing-range training as a prerequisite to lawful gun ownership. <u>Ezell</u>, 651 F.3d at 689-90.  Because the range ban severely encroached on "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense," the court found that the City's ban was subject to a heightened scrutiny analysis—one that was "more rigorous" than the intermediate scrutiny applied in <u>Skoien</u> but was "not quite" strict scrutiny.  <u>See</u> <u>Id.</u> at 708.  The <u>Ezell</u> court emphasized that heightened scrutiny was appropriate because the plaintiffs' claim, unlike the claim in <u>Skoien</u>, was brought by a "law-abiding, responsible citizen" and involved "the central self-defense component of the right" as described in <u>Heller</u>, 554 U.S. at 635.  <u>Ezell</u> 651 F.3d at 708.

36

However, the heightened scrutiny analysis applied in the <u>Ezell</u> case

is not the appropriate standard to apply in this case because the Illinois

UUW and AUUW statutes, which do not prohibit home possession, do

not come as close to the core of the Second Amendment right as the law

challenged in <u>Ezell</u>.  In <u>Ezell</u>, the range ban infringed upon the core of the

right because it prohibited citizens from satisfying a prerequisite to lawful

gun ownership—thereby preventing citizens from lawfully possessing

guns in the home for self-defense.  <u>See</u> <u>Ezell</u>, 651 F.3d at 708.  By

contrast, the UUW and AUUW statutes do not restrict possession of

weapons for the purpose of self-defense in the home and only restrict

possession outside of the home under limited circumstances.  <u>See</u> 720

ILCS 5/24-1(a)(4), (10); 720 ILCS 5/24-1.6(a).  Additionally, unlike the

ordinance at issue in <u>Ezell</u>, neither the UUW statute nor the AUUW

statute burdens a necessary corollary to that right because the statutes do

not, for example, prevent qualified individuals from purchasing a firearm,

transporting a firearm, or obtaining proficiency in firearm use.  <u>See</u> <u>Ezell</u>,

651 F.3d at 708-10 (finding that a city ordinance that banned firing

37

ranges while simultaneously requiring firing-range training as a

prerequisite to lawful firearm possession burdened a "necessary corollary"

to the right to bear arms in the home for self-defense).  Accordingly, the

UUW and AUUW statutes are not subject to the heightened level of

scrutiny applied in Ezell.  See Ezell, 651 F.3d at 703.

Because neither the heightened scrutiny applied in Ezell nor

rational basis review is the appropriate standard, this Court will apply

intermediate scrutiny in this case.  This Court notes that a majority of

courts considering Second Amendment challenges since the Heller

decision have applied intermediate scrutiny.  See Skoien, 614 F.3d at

641-42 (applying intermediate scrutiny to 18 U.S.C. § 922(g)(9), which

bars possession of a weapon by individuals convicted of misdemeanor

domestic violence); see also Mazzarella, 614 F.3d at 89 (applying

intermediate scrutiny to a law prohibiting possession of handguns with

obliterated serial numbers); Chester, 628 F.3d at 680 (applying

intermediate scrutiny to 18 U.S.C. § 922(g)); Reese, 627 F.3d at 800-01

(same).

In applying intermediate scrutiny, this Court will consider: (1) whether the contested law serves an important governmental objective; and (2) whether the statute is substantially related to that governmental objective.  See Skoien, 614 F.3d at 641.  In determining whether such a substantial relationship exists, this Court may consider both logic and data.  See id. at 642 (finding that "both logic and data establish[ed] a substantial relationship" between the statute and the governmental objective at issue).

Illinois' UUW statute prohibits individuals from bearing firearms outside of one's home, legal dwelling, or place of business, except under certain circumstances.  See 720 ILCS 5/24-1(a)(4).  The statute provides, among other things, that individuals with valid Firearm Owner's Identification ("FOID") cards may lawfully possess firearms in public so long as the firearm is broken down in a non-functioning state, not immediately accessible, or unloaded and enclosed in a case.  See 720 ILCS 5/24-1(a)(4)(iii).  The AUUW statute makes it a felony to possess a firearm outside of one's home, legal dwelling, or place of business when

one of the following factors is present: "(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or (B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense . . . ." 720 ILCS 5/24-1.6(a)(3)(A), (B).

Defendants' asserted basis for enacting the UUW and AUUW statutes is public safety. <u>See</u> Defs.' Resp. to Pls.' Mot. (d/e 26) at 13. In <u>Skoien</u>, the Seventh Circuit recognized that public safety is a valid governmental interest. <u>Skoien</u>, 614 F.3d at 641-42. The court specifically stated that "no one doubts that the goal of § 922(g), preventing armed mayhem, is an important governmental objective." <u>Id.</u> at 642. As such, the first factor in the intermediate scrutiny test—whether the challenged law serves an important governmental objective—is satisfied for both the UUW and AUUW statutes.

The second factor—whether the statute is substantially related to an important governmental interest—must also be satisfied. Defendants assert that the UUW and AUUW statutes are substantially related to the

40

government's interest in public safety because the statutes make it "more difficult to discharge firearms in public, thereby reducing the risk that guns will fire to deadly effect, either purposefully or accidentally." See Defs.' Resp. to Pls.' Mot. at 13.  Defendants also argue that empirical evidence supports their assertion that the UUW and AUUW statutes are related to public safety goals, citing preliminary studies that indicate that the passage of "right to carry" laws in other states corresponds with a measurable increase in crime.  See id. (citing John J. Donohue, Guns, Crime and the Impact of State Right to Carry Laws, 73 Fordham L. Rev. 623, 630-39 (2004); Concealed Carry Killers, Violence Policy Center (2009), http://www.vpc.org/ccwkillers.htm).

This Court need not decide whether a ban on the possession of loaded, uncased, and accessible firearms in public truly reduces the risk of gun violence in public.  This Court need only determine whether there is a substantial relationship between the UUW and AUUW statutes and the statutes' intended effect of ensuring public safety.  Under intermediate scrutiny, the fit between the challenged law and the law's

objective must be "reasonable, not perfect."  <u>Reese</u>, 627 F.3d 792, 801

(quoting <u>Marzzarella</u>, 614 F.3d at 98); <u>see also</u> <u>Mimes</u>, 953 N.E.2d at

76.

This Court finds that Defendant's assertions and supporting

evidence are sufficient to establish a substantial relationship between the

means employed by the UUW and AUUW statutes and the

government's asserted interest in public safety.  One may reasonably

conclude that prohibiting the possession of loaded, uncased, and

immediately accessible firearms in public will make it more difficult for

individuals to discharge firearms in public and will thereby diminish the

public's risk of injuries and death by gunfire.  <u>See</u> <u>Skoien</u>, 614 F.3d at

641-42 (stating that courts may look to logic in order to find a

substantial relationship between a regulation and its objective); <u>see also</u>

<u>Montyce H.</u>, 2011 WL 5903448, at *6-7 (citing <u>Mimes</u>, 953 N.E.2d at

76-77 (applying intermediate scrutiny and finding that the fit between

the challenged provisions of the AUUW statute and the government's

important interest in public safety is "absolutely reasonable" in part

because the statute's prohibition of carrying loaded and accessible

firearms in public "is justified by the potential deadly consequences to

innocent members of the general public when someone carrying a loaded

and accessible gun is either mistaken about his need for self-defense or

just a poor shot")).  Empirical evidence supports this conclusion.  See

Defs.' Resp to Pls.' Mot. at 13 (citing Donahue, at 630-39; Violence

Policy Center, supra).  Because there is a substantial relationship between

Illinois' public safety objective and the statutes at issue, this Court finds

the UUW and AUUW statutes are constitutional under an intermediate

scrutiny analysis.  See Skoien, 614 F.3d at 641.  Plaintiffs cannot,

therefore, show any prospects of prevailing on the merits of their

challenge to the UUW and AUUW statutes, and their preliminary

injunction motion must be denied.  See Girl Scouts of Manitou Council,

Inc., 549 F.3d at 1086 ("If the court determines that the moving party

has failed to demonstrate any one of [the] three threshold requirements,

it must deny the [preliminary] injunction.").

B.  **Inadequacy of a Legal Remedy, Irreparable Harm, and Balancing of Harms**

Because this Court has determined that Plaintiffs have failed to demonstrate a likelihood of success on the merits, this Court may deny the injunction without analyzing the remaining preliminary injunction factors.  See <u>Girl Scouts of Manitou Council, Inc.</u>, 549 F.3d at 1086. Nevertheless, this Court will briefly address the remaining threshold factors—inadequacy of a legal remedy and irreparable harm.  See <u>id.</u> Rather than analyze inadequacy of a legal remedy and irreparable harm as separate factors, courts may consider the two factors jointly.  See <u>Ezell</u>, 651 F.3d at 697.  This Court will do so and then briefly discuss the balancing of harms factor.

The Second Amendment's central component is the right to possess firearms for self-defense in the home, and infringements of this right cannot be compensated by money damages.  <u>Ezell</u>, 651 F.3d at 699 (citing <u>Heller</u>, 554 U.S. at 592–95).  As such, harm resulting from a Second Amendment violation is "properly regarded as irreparable and having no adequate remedy at law."  <u>Ezell</u>, 651 F.3d at 699.

Had Plaintiffs been able to prove a violation of their Second Amendment right to bear arms, Plaintiffs would have necessarily been able to establish irreparable harm and a lack of adequate legal remedy. However, Plaintiffs' inability to prove a Second Amendment violation prevents them from establishing these elements.

Furthermore, the State undoubtedly has the authority to regulate firearms in order to ensure public safety. See Heller, 554 U.S. at 626-27. Striking down the UUW and AUUW statutes would jeopardize Illinois' public safety objectives. By contrast, continued enforcement of the statutes poses no harm to Plaintiffs, as the statutes do not violate Plaintiffs' Second Amendment rights. The public's significant interest in general safety outweighs Plaintiffs' interest in carrying firearms outside of the home for Plaintiffs' own safety. To the extent it is necessary to analyze factors aside from the likelihood of success on the merits, the Court finds the foregoing preliminary injunction factors militate against issuing injunctive relief.

# V.  MOTION TO DISMISS

A motion to dismiss is subject to review under the standard set forth in Federal Rule of Civil Procedure 12(b)(6).  When reviewing a motion to dismiss, a court looks at the sufficiency of the complaint and not whether the plaintiff has a winning claim.  <u>See</u> <u>McCormick v. City of Chicago</u>, 230 F.3d 319, 323-26 (7th Cir. 2000).  Still, a complaint must do more than merely "avoid foreclosing possible bases for relief." <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).  A complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level."  <u>Id.</u> (internal quotation marks omitted).  "Rule 12(b)(6) should be employed only when the complaint does not present a legal claim."  <u>Smith v. Cash Store Management, Inc.</u>, 195 F.3d 325, 327 (7th Cir. 1999) (internal quotation marks omitted).

Plaintiffs' Amended Complaint contains a single cause of action.  It alleges that the UUW and AUUW statutes violate Plaintiffs' Second Amendment right to carry firearms, concealed or otherwise, outside their

homes.  See Am. Compl. at 10.  Because this Court has determined that

individuals do not have a Second Amendment right to bear arms outside

of the home, this Court finds that the UUW and the AUUW

statutes—which only regulate firearm possession outside of the home—do

not infringe on Plaintiffs' Second Amendment rights.  See Heller, 554

U.S. at 635 (holding only that the Second Amendment affords

individuals a right to bear arms "in the home" and explaining that the

Second Amendment "elevates above all other interests the right of . . .

citizens to use arms in defense of hearth and home").  Therefore,

Plaintiffs' Amended Complaint does not present a viable Second

Amendment claim.

Alternatively, as discussed earlier in this Opinion, even if this Court

were to assume that there is a Second Amendment right to bear arms

outside of the home and the challenged statutes interfere with that right,

the statutes survive constitutional scrutiny.  Consequently, Plaintiffs'

Second Amendment challenge to the UUW and AUUW statutes is not

sufficient to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Plaintiffs' claim

must be dismissed.  See Tamayo, 526 F.3d at 1084.

## VI.  CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary and/or Permanent Injunction (d/e 13) is DENIED and Defendants' Motion to Dismiss (d/e 24) is GRANTED.  This case is CLOSED.

IT IS SO ORDERED.

ENTERED: February 3, 2012

FOR THE COURT:               s/ Sue E. Myerscough
                                        SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

for the
Central District of Illinois

| | | |
|---|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) | |
| vs. | ) ) ) | Case Number:  **11-3134** |
| LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | | |

### JUDGMENT  IN A CIVIL CASE

  **JURY VERDICT**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

  **XXX    DECISION BY THE COURT**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

        **IT IS ORDERED AND ADJUDGED** pursuant to an order entered by the Honorable Sue E. Myerscough:  Defendants' Motion to Dismiss (d/e 24) is Granted.  Case Closed .

**Dated:**  2/3/2012

                              s/ Pamela E. Robinson
                              Pamela E. Robinson
                              Clerk, U.S. District Court

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS CARRY, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 11-03134 |
| | ) |
| LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GRAU, in his official capacity as Director of the Illinois State Police, | ) ) ) ) ) ) |
| | ) ) |
| Defendants. | ) |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Plaintiffs' Motion for Attorney's Fees (d/e 58), Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 (d/e 84), and Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 (Corrected) (d/e 86). Also before the Court is Defendants' Motion to Dismiss Renewed (d/e 72). Plaintiffs' Motion for Attorney's Fees (d/e 58) is GRANTED IN PART and DENIED IN PART. For the

reasons detailed in this opinion, Plaintiffs' Attorneys are entitled to attorney's fees totaling $153,871.00. Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29. Plaintiffs' Motions for Sanctions (d/e 84; d/e 86) are DENIED. Defendants' Motion to Dismiss Renewed (d/e 72) is GRANTED.

## I.    FACTUAL BACKGROUND.

In May 2011, individual Plaintiffs Michael Moore, Charles Hooks, Peggy Fechter, and Jon Maier, along with organizational Plaintiffs the Second Amendment Foundation ("SAF") and Illinois Carry filed suit under 42 U.S.C. § 1983 against Defendants Illinois Attorney General Lisa Madigan and Director of the Illinois State Police Hiram Grau for violations of Plaintiffs' rights under the Second Amendment. Plaintiffs alleged that certain Illinois gun laws, the Unlawful Use of Weapons statute, 720 ILCS 5/24-1 [hereinafter "UUW" statute], and the Aggravated Unlawful Use of a Weapon statute, 720 ILCS 5/24-1.6 [hereinafter "AUUW" statute], violated Plaintiffs' right to keep and bear arms because they restricted possession of guns outside the home under certain circumstances. Plaintiffs sought a declaratory judgment that the gun laws were

unconstitutional as well as preliminary and permanent injunctions against the laws' enforcement.

This Court denied Plaintiffs' injunctions and granted Defendants' Motion to Dismiss.  Moore v. Madigan, 842 F. Supp. 2d 1092 (C.D. Ill. 2012), rev'd 702 F.3d 933 (7th Cir. 2012).  On appeal, this case was consolidated with Shepard v. Madigan.  See 863 F. Supp. 2d 774 (S.D. Ill. 2012).  The Seventh Circuit Court of Appeals reversed and remanded both cases for entry of a declaration of unconstitutionality and a permanent injunction, but stayed its mandate for 180 days to permit the Illinois General Assembly to "craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment." Moore, 702 F.3d at 942.  After Defendants' Petition for Rehearing En Banc was denied and the stay was extended an additional 30 days to accommodate the General Assembly's legislative process, the Firearm Concealed Carry Act, 430 ILCS 66/1 et seq., was passed over gubernatorial veto on July 9, 2013.  See Shepard v. Madigan, 734 F.3d 748, 749 (7th Cir. 2013).  The same day, Defendants filed a Motion to Dismiss on the grounds that Plaintiffs' claims were moot.  (D/e 51.)  This Court denied

Defendants' Motion, (d/e 57), and Plaintiffs filed the present Motion for Attorney's Fees claiming $219,808.00 in fees and $3,193.29 in costs. (D/e 58.)

Subsequently, this Court permitted limited discovery including interrogatories and depositions of Plaintiffs' Attorneys in light of the substantial sum Plaintiffs sought in fees and costs in this case, which did not proceed beyond the preliminary injunction stage in this Court. (See Text Order of Jan. 2, 2014; Text Order of Jan. 7, 2014.) On May 5, 2014, Defendants filed their response to Plaintiffs' Motion for Attorney's Fees, (d/e 70), and the renewed Motion to Dismiss as Moot now before the Court. (D/e 72.) Finally, Plaintiffs filed their Motions for Sanctions, (d/e 84; d/e 86), in July 2014.

## II. DEFENDANTS' RENEWED MOTION TO DISMISS AS MOOT IS GRANTED.

Now that the Illinois General Assembly has passed the Firearm Concealed Carry Act and the Illinois State Police have begun accepting, processing, and granting concealed-carry licenses, Defendants assert that no live controversy persists in this case.

Accordingly, Defendants move again to dismiss this case as moot. (D/e 72.)

The case at bar no longer presents a case or controversy and must be dismissed as moot. The case-or-controversy requirement applies through all stages of federal proceedings, trial and appellate. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). "When a challenged statute is repealed or significantly amended pending review, and a plaintiff seeks only prospective relief, a question of mootness arises." Rembert v. Sheahan, 62 F.3d 937, 940 (7th Cir. 1995) (citing Associated Gen. Contractors v. Jacksonville, 508 U.S. 656 (1993)). The general rule is that "repeal, expiration, or significant amendments to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief." Fed'n Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 929 (7th Cir. 2003) (citing Lewis, 494 U.S. 472). To determine whether the Firearm Concealed Carry Act's amendments to the statutory provisions at issue have rendered the instant case moot, this Court must look at the plain language of the Firearm Concealed Carry Act along with "the environment, association and character of the statute in its field of operation, the history of

previous legislation, the legislative history of the act, the nature of the defect sought to be remedied by its enactment, . . . and the time of taking effect." 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction: Interpretation of Repealing Statutes § 23.6 (7th ed. 2009).

As more fully detailed in this Court's denial of Defendants' first Motion to Dismiss as Moot, the General Assembly did not repeal the UUW and AUUW statutes. See Moore v. Madigan, No. 11-cv-3134, 2013 WL 5587289, at *2 (Oct. 10, 2013). Rather, as of July 9, 2013, the General Assembly significantly amended the statute providing exemptions to criminal liability under the UUW statute, see 720 ILCS 5/24-2, and the AUUW statute itself, 720 ILCS 5/24-1.6, to provide a defense to prosecution for these offenses where the defendant has been issued a currently valid license under the Firearm Concealed Carry Act.

From the outset of this case, Plaintiffs sought an end to the ban on private citizens carrying any firearms outside the home—and they expressly reserved support for any new law in Illinois to regulate the carrying of firearms in public, including a constitutional licensing program. (See Am. Compl., d/e 5, p. 2,

¶ 4.)  They prevailed at the Court of Appeals, whose mandate required the entry of declarations of unconstitutionality and permanent injunctions against the UUW and AUUW statutes as they existed prior to their amendment.  702 F.3d at 942.  But the Court of Appeals stayed its mandate, first for 180 days and then for an additional 30 days at Defendants' request to accommodate the General Assembly.  Subsequently, the General Assembly in the Firearm Concealed Carry Act materially altered the text of the AUUW statute and the "the environment, association and character of the statute in [the] field of operation" of both the UUW statute and the AUUW statute, making the issuance of a currently valid license under the Firearm Concealed Carry Act a defense to prosecution for violating these statutes.  See Singer & Singer, supra, at § 23.6.

All this was just as true at the time this Court denied Defendants' initial Motion to Dismiss as Moot on October 9, 2013, as it is now.  Last October, however, this Court held that this case still presented a live controversy, and was not moot, for two reasons.  First, Plaintiffs had initially sought the end to the ban on carrying any firearms in public, while the Firearm Concealed Carry

Act authorized the licensed carrying of a "pistol, revolver, or handgun."  See Moore v. Madigan, No. 11-cv-3134, 2013 WL 5587289, at *6–*9 (C.D. Ill. Oct. 10, 2013).  Accordingly, this Court reasoned that issues raised in Plaintiffs' Amended Complaint remained live.  Second, this Court noted that, as of October 9, 2013—just 92 days after passage of the Firearm Concealed Carry Act[1]—no one in Illinois had yet been issued a license under the Act, and, therefore, no relief had yet been provided.  Id. at *9.

Since October 9, 2013, two significant events have changed the "environment, association, and character" of the challenged statutes in their field of firearm regulation, rendering the present case moot.  See Singer & Singer, supra, at § 23.6.  First—as Defendants point out and Plaintiffs concede—the Illinois Department of State Police has begun processing applications for and issuing licenses under the Firearm Concealed Carry Act.  (See Defs.' Mem. Supp. Mot. Dismiss Renewed, d/e 73, p. 2; Pls.' Mem.

---

[1] The Act specifically provided the Illinois Department of State Police up to 180 days to establish application rules and to make license applications available.  430 ILCS 66/10(d).  The Act further provided up to an additional 90 days after receiving a completed application for the Department of State Police to issue or deny an applicant a license.  Id. 66/10(e).

Opp. Defs.' Renewed Mot. Dismiss, d/e 78, p. 7.)  Defendants

dispute the relevance of the Department of State Police's actions

because the issuance of licenses was the anticipated outcome of

passage of the new Firearm Concealed Carry Act and,

fundamentally, the anticipated outcome of Plaintiffs' lawsuit.  But

the issuance of actual licenses provides the relief sought, an end to

the flat ban on carrying any firearms outside the home, by

permitting the licensed carrying of concealed pistols, revolvers, and

handguns.  The Firearm Concealed Carry Act remedied the

unconstitutional defect of the UUW and AUUW statutes.  In light of

the relief now provided, the environment, association, and character

of criminal liability under the UUW and AUUW statutes have

changed.

Second, the Seventh Circuit Court of Appeals has affirmed the

dismissal of this suit's companion case out of the Southern District

of Illinois as moot.  See Shepard v. Madigan, 734 F.3d at 751–52.

In Shepard, plaintiffs pointed out on remand that the timeline the

Firearm Concealed Carry Act permitted to the Department of State

Police to make applications available to the public and thereafter to

issue licenses to qualified applicants totaled 270 days.  Id. at 750;

see 430 ILCS 66/10(d), (e).  Dissatisfied with this delay, the

Shepard plaintiffs asked the district court to order the State of

Illinois to allow any Illinois resident with a Firearm Owner ID (FOID)

to carry any gun outside the home pending the issuance of the first

licenses under the Firearm Concealed Carry Act, notwithstanding

the restrictions on concealed carrying the Act imposed consistent

with the Court of Appeals' mandate.  Id.; see also Moore, 702 F.3d

at 942 (staying the mandate to permit the Illinois Assembly time to

"craft a new gun law that will impose reasonable limitations,

consistent with the public safety and the Second Amendment").

The United States District Court for the Southern District of

Illinois rejected the plaintiffs' proposed remedy and dismissed the

case as moot, and the Court of Appeals affirmed on the grounds

that plaintiffs' proposed remedy was unreasonable.  Shepard, 734

F.3d at 750.  Moreover, the Court of Appeals noted, the Firearm

Concealed Carry Act was consistent with its mandate, which "did

not forbid the [S]tate to impose greater restrictions on carrying a

gun outside the home than existing Illinois law . . . imposes on

possessing a gun in the home." Id. at 751.  Nor was the district

court's dismissal actionable for declining to direct declaratory or

injunctive relief against the operation of the UUW and AUUW statutes before the enactment and implementation of a new law to correct the statutes' constitutional defect.  Id.  Accordingly, if the plaintiffs wished to challenge the 270-day delay, or anything else about Illinois's regime of firearm regulation under the Firearm Concealed Carry Act, the plaintiffs would have to bring another lawsuit.  Id. at 752.  The Court of Appeals affirmed the district court's dismissal, which held that the plaintiffs' complaint addressed statutes which have since been significantly amended.  See Fed'n Adver. Indus. Representatives, Inc., 326 F.3d at 929.

In light of the Seventh Circuit's affirmance of the dismissal of Shepard as moot, the "environment, association, and character" of the UUW and AUUW statutes in their field of firearm regulation have changed:  As amended, these statutes are no longer the proper subject of a live controversy in this case.  Moreover, just like in Shepard, this Court cannot provide any additional relief in the case at bar because the UUW and AUUW statutes have been substantially amended, consistent with the mandate of the Court of Appeals.  See Shepard, 734 F.3d at 751.

To be sure, Plaintiffs, here, do not ask this Court for declaratory or other further relief, as in <u>Shepard</u>.  Instead, Plaintiffs simply oppose the motion to dismiss as moot on the grounds that they seek attorney's fees in this case.  Plaintiffs further assert that Defendants' Motion to Dismiss as Moot is intended to bolster Defendants' position opposing Plaintiffs' Motion for Attorney's Fees.  And, indeed, in opposing an award of attorney's fees, Defendants have attempted to characterize Plaintiffs as non-prevailing parties, unentitled to attorney's fees.  (More on this later.)  But Plaintiffs confuse Defendants' Motion to Dismiss as Moot for an attempt to strip this Court of all authority to wind up this case, including the authority to award attorney's fees.  Even Defendants concede this Court's authority to award fees after dismissal for mootness, notwithstanding Defendants' arguments on the issue of Plaintiffs' status as prevailing parties.  (<u>See</u> Defs.' Mem. Supp. Mot. Dismiss Renewed, d/e 73, p. 4 ("[T]he request for attorney['s] fees presents an ancillary issue and seeks relief that can properly be granted after judgment."); <u>see also</u> <u>Nat'l Rifle Ass'n of Am., Inc. v. City of Chicago</u>, 646 F.3d 992 (7th Cir. 2011) [hereinafter <u>NRA v. Chicago</u>] (holding that plaintiffs were prevailing parties entitled to attorney's fees

because of their victory at the Supreme Court, notwithstanding mootness upon repeal of unconstitutional gun-control ordinance at issue).)  Moreover, Plaintiffs' prayer for attorney's fees in their Amended Complaint does not save this case from its present mootness; as Defendants argue, an interest in attorney's fees is insufficient to create a case or controversy when none exists on the merits.  Lewis, 494 U.S. at 480; Breneisen v. Motorola, Inc., 656 F.3d 701, 706 (7th Cir. 2011).

In summary, the Firearm Concealed Carry Act has substantially amended the UUW and AUUW statutes challenged in this case, ending the flat ban on carrying firearms outside the home in Illinois.  Because the Department of State Police has begun issuing licenses under the Act, relief has been granted on the merits of Plaintiffs' Amended Complaint.  Moreover, the defenses to criminal liability for UUW or AUUW provided under the Firearm Concealed Carry act have changed the environment, association, and character of gun regulation in the State of Illinois, consistent with the Court of Appeals mandate.  The gun laws' unconstitutional defect has been remedied.  Therefore, the controversy on the merits over Illinois gun laws has come to an end in this case.  Accordingly,

this Court must dismiss this case as moot.  Yet, this Court retains

jurisdiction to resolve the ancillary issues raised in Plaintiffs'

Motion for Attorney's Fees and Motion for Sanctions, which this

opinion now addresses in turn.

## III.  PLAINTIFFS ARE PREVAILING PARTIES ENTITLED TO $153,871.00 IN ATTORNEY'S FEES.

At the true center of the parties' dispute concerning mootness

is a dispute as to whether Plaintiffs are prevailing parties entitled to

recover attorney's fees.  But, just like Plaintiffs' concern that this

case is not moot, Defendants' argument that Plaintiffs are not

prevailing parties is incorrect.

### A. Plaintiffs are prevailing parties.

Defendants assert that Plaintiffs are not prevailing parties

entitled to recover attorney's fees.  Defendants argue that, given

that this case is moot, Plaintiffs have received "no judicially ordered

relief" in their challenges to the UUW and AUUW statutes.  (Defs.'

Fee Pet. Resp. & Objections, d/e 70, p. 2.)  In support of this

position, Defendants seem to imply—though they do not say so

outright—that the judicially ordered relief Plaintiffs must obtain to

qualify as prevailing parties is a declaratory judgment or an

injunction from this Court.  (See, e.g., id., p. 5 ("Thus, unlike the
present case, the Young plaintiffs had obtained the relief they
sought through an enforceable injunction."))  Defendants further
contend that Plaintiffs' claim to be prevailing parties hinges on the
"catalyst theory," which has been rejected by the Supreme Court.
See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health
& Human Servs., 532 U.S. 598 (2001).  Because the Illinois General
Assembly's legislation changed the gun-control regulations,
Defendants assert that Plaintiffs obtained no judicial relief.
Plaintiffs contend that they are prevailing parties because the
Illinois General Assembly passed the Firearm Concealed Carry Act
only once the Seventh Circuit had struck down the gun laws that
Plaintiffs challenged as unconstitutional.  (See Pls.' Reply Supp. Pet.
Att'y's Fees, d/e 80, p. 3.)  Therefore, Plaintiffs assert, they are
entitled to recover attorney's fees.

     Plaintiffs seek to recover their attorney's fees under 42 U.S.C.
§ 1988(b), which provides that, in an action to enforce a provision of
42 U.S.C. § 1983, "the court, in its discretion, may allow the
prevailing party . . . a reasonable attorney's fee as part of the
costs . . . ."  A party prevails in litigation where it obtains a

favorable, judicially sanctioned change in the legal relationship

between the parties.  See Buckhannon, 532 U.S. at 605; Zessar v.

Keith, 536 F.3d 788, 795 (7th Cir. 2008).  As Defendants correctly

note, Buckhannon rejected the "catalyst theory," which posited that

a plaintiff is a prevailing party if it achieves its desired result

because its lawsuit prompted defendants' voluntary change in

conduct.  532 U.S. at 601.  But such a voluntary change is not

enough; rather, the defendants' change in conduct must evince the

necessary "judicial imprimatur" for the plaintiff to be said to prevail.

Id.; Zessar, 536 F.3d at 796.

Entry of final judgment on the merits is the hallmark instance

of such judicial imprimatur, though the Buckhannon Court also

recognized settlement agreements enforced through consent decrees

as another "example[]" of judicially sanctioned change.  532 U.S. at

795–96.  The Seventh Circuit has also held that a favorable decision

on the merits at the Supreme Court carries the necessary judicial

imprimatur for the prevailing party to collect attorney's fees,

notwithstanding mootness on remand.  NRA v. Chicago, 646 F.3d at

994 ("If a favorable decision of the Supreme Court does not count as

the necessary judicial imprimatur on the plaintiffs' position, what

would?" (citations omitted)). A decision in favor of a plaintiff that is continued or stayed before entry of final judgment, pending a defendant's promised repeal of an overturned law, also carries the necessary judicial imprimatur to change the legal relationship between the parties. Palmetto Props., Inc. v. Cnty. of DuPage, 375 F.3d 542 (7th Cir. 2004).

In NRA v. Chicago, after the Supreme Court held in District of Columbia v. Heller, 554 U.S. 570 (2008), that the Second Amendment barred the federal district's ban on operable handguns in the home, the NRA and others filed suit against the City of Chicago (and the Village of Oak Park, see Nat'l Rifle Ass'n v. Vill. of Oak Park, 871 F. Supp. 781 (N.D. Ill. 2012) [hereinafter NRA v. Oak Park]) seeking to overturn similar bans. NRA v. Chicago, 646 F.3d at 993. NRA was unsuccessful at the district court and court of appeals, but its case was granted certiorari and remanded after the Supreme Court held that the Second Amendment also applied to states and municipalities as a matter of due process. Id. (citing McDonald v. Chicago, 561 U.S. 742 (2010)). On remand, NRA sought attorney's fees under § 1988, but the district court at first denied the fee petition on the grounds that, if the City of Chicago's

repeal of its unconstitutional ordinance rendered NRA's claims moot, NRA was not a prevailing party.  Id.

The Seventh Circuit reversed the district court's denial of NRA's fee petition.  While the district court had correctly observed that NRA did not obtain a favorable judgment at the district court, the Seventh Circuit noted that NRA "did better:  They won in the Supreme Court, which entered a judgment in their favor.  When the Supreme Court rendered its decision, the controversy was live."  Id. The Supreme Court had entered judgment in NRA's favor that overturned the ordinances NRA had challenged, a decision that "alters the legal relationship of the parties."  Id. at 994.  Moreover, the Supreme Court's decision did not simply address the purportedly preliminary legal issue of the district court's denial of a preliminary injunction; rather, the "litigation was over except for the entry of an injunction by the district court."  Id.  Only once NRA had its Supreme Court judgment in hand did the City of Chicago give in, making entry of the injunction unnecessary as moot.  Id. Accordingly, NRA had the necessary judicial imprimatur to claim prevailing-party status and was entitled to attorney's fees.  Id. at 995.

In <u>Palmetto Properties</u>, an adult entertainment developer challenged the constitutionality of a DuPage County, Illinois, ordinance and an Illinois law that restricted the locations where adult entertainment venues could be constructed. 375 F.3d at 543–45. The district court issued an order concluding that parts of these laws violated the First and Fourteenth Amendments. <u>Id.</u> at 546. But defendants informed the district court that they did not intend to appeal and requested a continuance, during which time defendants repealed the offensive parts of the laws. <u>Id.</u> The district court then dismissed the case as moot and awarded attorney's fees to the adult entertainment developer over defendants' objection. <u>Id.</u> The Seventh Circuit Court of Appeals affirmed, noting that the district court had abstained from entering a final order formally closing the case only because defendants had promised to repeal the overturned laws. <u>See id.</u> at 549–50. This sequence of events still carried the mark of a judicially sanctioned change in the parties' legal relationship.

Except for the identity of the reviewing court, the case at bar is indistinguishable from <u>NRA v. Chicago</u>. Here, Plaintiffs successfully appealed this Court's denial of their preliminary injunction and

grant of Defendants' Motion to Dismiss, obtaining a judgment in
their favor at the Seventh Circuit Court of Appeals.  See Final J. at
1, Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012) (No. 12-1269),
d/e 46.  Only then did the Illinois General Assembly capitulate,
passing the Firearm Concealed Carry Law and rendering moot
Plaintiffs' claims.  To paraphrase NRA v. Chicago, if the favorable
decision of the Court of Appeals does not count as the necessary
judicial imprimatur on Plaintiffs' claim, what would?  See 646 F.3d
at 994.  Moreover, like in Palmetto Properties, the change in
Illinois's gun laws in the case at bar occurred before this Court
could enter final judgment only because Defendants requested and
received a stay of the Seventh Circuit's mandate precisely in order
to change the challenged laws, thereby mooting Plaintiffs' case.

Plaintiffs in the case at bar are not "catalyst theory" victors.
They did not win over the Illinois General Assembly without the
coercive force of a court's judgment.  They had the Seventh Circuit's
judgment.  Compare Buckhannon, 532 U.S. at 601 (challenged
state regulations amended voluntarily during pendency of litigation,
thereby mooting plaintiffs' claims without any judicial order).  Nor is
their relief anything other than judicially-ordered.  They did not

need a complex injunction to enforce the terms of their win; the Seventh Circuit declared Illinois's gun-control laws flatly unconstitutional. <u>Compare</u> <u>Zessar</u>, 536 F.3d at 790 (district court opinion declared challenged absentee-voter statute violated plaintiffs' due process rights but no final judgment could issue without parties' input on terms of injunction, and Illinois General Assembly amended State's Election Code to moot plaintiffs' claim before entry of final judgment). They did not win at the Seventh Circuit on a mere procedural or preliminary issue. This Court's granting of Defendants' Motion to Dismiss was reversed. <u>Compare</u> <u>Sole v. Wyner</u>, 551 U.S. 74 (2007) (grant of preliminary injunction in plaintiffs' favor does not make them prevailing parties when case is resolved against them on the merits); <u>Hanrahan v. Hampton</u>, 446 U.S. 754 (1980) (appellate holding that plaintiffs presented triable issue does not make plaintiffs prevailing parties because they may still lose on the merits at trial). The sole obstacle to this Court's entry of final judgment in Plaintiffs' favor was the Seventh Circuit's stay of its mandate—given at Defendants' request. <u>Compare</u> <u>Palmetto Props., Inc.</u>, 375 F.3d 542.

The judgment of the Seventh Circuit in Plaintiffs' favor carried all the judicial imprimatur necessary to designate Plaintiffs prevailing parties.  Accordingly, Plaintiffs are entitled to reasonable attorney's fees under 42 U.S.C. § 1988(b).

**B. Plaintiffs are entitled to $153,871.00 in attorney's fees.**

Having determined that Plaintiffs are prevailing parties, the Court must resolve the issue of a reasonable sum.  Prevailing parties in federal court are entitled to recover costs other than attorney's fees as a matter of course.  Fed. R. Civ. P. 54(d)(1) ("[C]osts—other than attorney's fees—should be allowed to the prevailing party.").  A prevailing party in an action under § 1983 may also recover reasonable attorney's fees as part of the costs.  42 U.S.C. § 1988(b).

To determine the value of a reasonable attorney's fee, courts use the "lodestar" method:  A reasonable attorney's fee is reached by initially multiplying the hours the prevailing party's lawyers have reasonably expended on the case by a reasonable hourly rate.  See, e.g., Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014).  The resulting lodestar figure is presumptively reasonable, but courts may nevertheless adjust the fee based on factors not included in the

initial computation.  Id.; see also Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).  Such factors may also be subsumed within the initial calculation of hours reasonably expended.  Id. at 434 n.9; accord Montanez, 755 F.3d at 553 n.2.  One significant factor is the degree of success on the merits, especially where the prevailing party succeeded on only some of his claims for relief.  Id. at 553. The ultimate guiding inquiry is whether the prevailing party "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  Hensley, 461 U.S. at 434.

### 1. The Court reduces Plaintiffs' Attorneys' claimed hours to those hours reasonably expended in this case.

Plaintiffs' Attorneys Alan Gura, David Sigale, and David Jensen have submitted documentation to show that they worked 88.1 hours, 101.8 hours, and 236.6 hours in this case, respectively.[2]  Mr. Gura also submits documentation of 5.4 hours of

---

[2] Mr. Gura and Mr. Jensen have also filed affidavits in support of the fact that they each kept contemporaneous records of their hours expended in this case.  Mr. Sigale also submitted an affidavit, but he makes no representation as to contemporaneous timekeeping.  Defendants do not object to Mr. Sigale's hours on this basis, however, and the Court notes that the quality of detail in Mr.

compensable travel time at half his claimed hourly rate, and Mr.
Sigale does the same for 17.3 hours of compensable travel; Mr.
Jensen chose not to seek compensation for his travel time because
he drove to the Central District of Illinois from his home in New
York.  Defendants submitted objections to these figures, seeking to
reduce Mr. Gura's compensable hours to 64.4; Mr. Sigale's hours to
73.0; and Mr. Jensen's hours to 41.0.

Hours that an attorney would not properly bill to his client in
the private sector cannot be properly billed to the adverse party
under a fee-shifting statute.  See Spegon v. Catholic Bishop of Chi.,
175 F.3d 544, 552 (7th Cir. 1999); accord Hensley, 461 U.S. at 434.
Therefore, a prevailing party should exclude from a fee request any
hours that are excessive, redundant, or otherwise unnecessary.
Spegon, 175 F.3d at 552.  Additional time that ought to be excluded
includes those hours an attorney expends on "tasks that are easily
delegable to non-professional assistance," including tasks that are
secretarial in nature.  See id.

_____

Sigale's timesheets is the highest of any lawyer in this case,
suggesting contemporaneous timekeeping.

### a. Plaintiffs' Attorneys have expended excessive hours in preparation of the fee petition.

Defendants' most meritorious objection to time billed is that Plaintiffs' Attorneys have expended excessive hours in preparation of the present fee petition. Defendants assert that Plaintiffs' Attorneys' 35.7 hours preparing the fee petition is excessive, and the Court would be tempted to agree flatly if not for its own calculation of Plaintiffs' Attorneys' time actually spent on the fee petition at 50.0 hours. Cf. NRA v. Oak Park, 871 F. Supp. at 790 n.5 (noting that calculating attorney's hours devoted to specific tasks is "work that is really for the lawyers to perform in the first instance, to provide grist for this Court's mill"). Mr. Gura alone claims 25.8 hours spent on the fee petition out of his total of 88.1 hours claimed, suggesting that nearly thirty percent of his contribution to his clients' success was the act of totting up the value of his contribution to his clients' success. Defendants specifically challenge 7.8 hours of Mr. Gura's time expended on the fee petition as excessive, unnecessary at the time because no fee petition was yet due, or duplicative of the work of co-counsel. Defendants further challenge 3.8 of the 12.5 hours claimed by Mr.

Sigale and 10.7 of the 11.7 hours claimed by Mr. Jensen on the same grounds.

Before evaluating these numbers alone, however, the Court must pause to note Defendants' reasoning in support of their objections to these hours.  To the Court's confusion, Defendants object to certain time entries as duplicative and argue for their exclusion, yet they object to other time entries as duplicative and nevertheless accede to Plaintiffs' Attorneys' full time demanded. (See, e.g., Defs.' Fee Pet. Resp. & Objections, d/e 70, Ex. 1, p. 44 (several entries marked "Duplicative").)  Additionally, Defendants give no reason for differences in the exclusions proposed for each of Plaintiffs' Attorneys, asserting that Mr. Gura's hours should be cut from 25.8 to 18.0 while Mr. Sigale's hours are cut from 12.5 to 8.7 and Mr. Jensen's hours from 11.7 to 1.0.[3]  Moreover, Defendants attempt to characterize hours expended as unreasonable in light of Plaintiffs' Attorneys' limited responses in discovery ordered by this

_____

[3] These are the reductions Defendants seek as far as the Court can tell, at any rate, given Defendants' confusing table of objections appended to their opposition to the fee petition and Defendants' failure to show their work or draw concrete conclusions outside of that table.

Court on January 2, 2014, even though all of Plaintiffs' Attorneys'

claimed hours (thus far) predate the filing of their fee petition on

December 16, 2013.  (Defs.' Fee Pet. Resp. & Objections, d/e 70, p.

27.)  Plaintiffs' Attorneys fare little better, in turn, when they

rationalize hours expended in preparation of the fee petition filed

December 16, 2014, by reference to the need to respond to

Defendants' later discovery requests and objections to their fee

petition.

Of course, by no means is 50.0 hours a reasonable amount of

time for Plaintiffs' Attorneys to expend in their initial request for

fees, nor is the 35.7 hours the parties dispute.  Plaintiffs' Attorneys

have no doubt known since the outset of this § 1983 suit that they

would seek fees under § 1988 if their clients prevailed.  (Plaintiffs'

Attorneys all but say as much in their responses to Defendants'

interrogatories, in which they detail their reduced-fee agreements

with Plaintiffs that provide for the apportionment of court-awarded

attorney's fees.  (See, e.g., Supplemental Declaration Alan Gura, d/e

81, Ex. 1, p. 2.))  Plaintiffs' Attorneys have averred that they

documented hours expended in this case contemporaneously,

eliminating the need for substantial time to prepare a fee petition.

And Plaintiffs' Attorneys had no objections to overcome or discovery requests to address in December 2013 when they filed their fee petition.  The vindication of constitutional rights can be done economically, and the documentation of work done in litigation can be done both economically and clearly.  See, e.g., Ustrak v. Fairman, 851 F.2d 983, 987–88 (7th Cir. 1988) (reducing hours spent on fee petition from approximately 140 hours by two-thirds [to approximately 47 hours] in case requiring approximately 575 hours attorney work time); Kurowski v. Krajewski, 848 F.2d 767, 776 (7th Cir. 1988) (affirming prevailing party's 1.6-hour billing on fee petition in case requiring approximately 140 hours attorney work time).  At the same time, the Court will not seek to substantiate Defendants' objections for them.  Cf. NRA v. Oak Park, 871 F. Supp. at 793 ("[I]t is not this Court's appropriate role to delve into matters not teed up by the litigants for its consideration.").

The Court finds that the reasonable number of hours Plaintiffs' Attorneys should have expended on the fee petition is obtained by splitting the difference between the 35.7 hours the parties contemplate and the reduced total Defendants would allow

after their objections, 13.4 hours, and then rounding the resulting difference to permit an equal award on fee petition hours among Plaintiffs' Attorneys.  In short, the midway point between 35.7 hours and 13.4 hours is 24.55 hours, which shall be rounded up to 24.6 hours and apportioned among Plaintiffs' Attorneys in 8.2-hour blocks.  The result is a reduction of 17.6 hours in Mr. Gura's time, a reduction of 4.3 hours in Mr. Sigale's time, and a reduction of 3.5 hours in Mr. Jensen's time.

   *b. Mr. Gura's hours are reduced from 88.1 hours to 70.5 hours.*

   Defendants challenge 23.7 hours billed by Mr. Gura, seeking to reduce his total reasonable hours expended from 88.1 hours to 64.4 hours.  Defendants challenge 7.8 hours of Mr. Gura's time spent on the fee petition as excessive, which the Court has already reduced from 25.8 hours to 8.2 hours and does not consider further.  Defendants also characterize approximately 6.3 hours as "duplicative" and therefore excludable, though Defendants continue their baffling practice of characterizing other time as "duplicative" while not actually objecting to it, as previously noted.

   Multiple lawyers may reasonably work on a single case.  See NRA v. Oak Park, 871 F. Supp. at 789 ("Of course there is nothing

wrong with having multiple lawyers work on a single case."). Staffing multiple lawyers may permit a more efficient distribution of work, see Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 661 (7th Cir. 2007), but the practice also leads to the potential for waste. See, e.g., Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 858–59 (7th Cir. 2009).

Defendants have not explained what about Mr. Gura's work duplicated the efforts of co-counsel. Rather, Defendants have generally objected to approximately half the time Mr. Gura spent in each of several telephone conferences with co-counsel, many of which lasted between 0.1 and 0.2 hours—that is, between 6 and 12 minutes—as well as other 0.1-to-0.2-hour entries in which Mr. Gura reviewed email correspondence from co-counsel. This Court can imagine no justification for allowing time to one party to a phone call but not another, or for cutting each party's time in half simply because the other party was on the other end of the line. Moreover, Mr. Gura adequately documented the subject matter of these telephone and email correspondences, or else the subject matter is apparent from the surrounding entries. (See, e.g., Mem. P. & A. Supp. Pls.' Mot. Att'y's Fees & Expenses [hereinafter Pls.'

Mot. Fees], d/e 59, Ex. 6, p. 2 (Entry of April 11, 2012: "Review Shepard brief, consolidation motion / Emails co-counsel re same").) And, more fundamentally, the Court finds that it is reasonable to staff three lawyers on a case addressing the constitutionality of Illinois gun laws for roughly 400 total hours.

The Court will not rehearse all of Defendants' further objections but will provide only a few further illustrative examples. Defendants label as "duplicative with [Mr.] Sigale" certain hours Mr. Gura spent drafting Plaintiffs' brief in opposition to en banc rehearing at the Court of Appeals, even though Defendants' petition for en banc rehearing occasioned the brief, and even though Mr. Gura expended approximately 15 hours on the brief while Mr. Sigale expended just 5.5 hours.[4]  The Court concludes that Mr. Gura must have been the lead author of this brief, and that his hours writing and Mr. Sigale's hours reviewing the brief were reasonable.  Defendants also object to 2.1 hours Mr. Gura expended prior to the appeal of this Court's original decision dismissing Plaintiffs' complaint.  (See Defs.' Fee Pet. Resp. &

---

[4] Mr. Jensen appears to have expended 1.3 hours on this brief, also reasonable.

Objections, d/e 70, Ex. 1, p. 21–22.)  The Court concludes that 2.1 hours of pre-appeal consultation on a case such as this one—all but foreordained to be appealed, regardless of the result at the district court—is likewise reasonable.

The Court has already reduced Mr. Gura's hours by 17.6 hours—from 25.8 hours to 8.2 hours—while addressing hours reasonably expended to prepare the fee petition.  In response to Defendants' other objections, the Court need not go further.  See Fox v. Vice, --- U.S. ---, 131 S. Ct. 2205, 2216 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.")  Accordingly, the Court finds that Mr. Gura reasonably expended 70.5 hours in this case.  The Court also finds that Mr. Gura reasonably expended 5.4 hours in travel associated with this case, to be billed at half Mr. Gura's awarded rate.

    *c. Mr. Sigale's hours are reduced from 101.8 hours to 95.9 hours.*

Turning next to Mr. Sigale's hours:  Defendants challenge 28.8 hours billed by Mr. Sigale, seeking to reduce his total reasonable

hours expended from 101.8 hours to 73.0 hours.  In adjusting the

hours expended on the fee petition, the Court has already reduced

Mr. Sigale's hours by 4.3 hours—from 12.5 hours to 8.2 hours.

Defendants raise two principal objections to Mr. Sigale's hours,

already discussed with reference to Mr. Gura.  First, Defendants

object to roughly half of Mr. Sigale's hours spent in telephone or

email correspondence with Mr. Jensen.  Though these

correspondences were occasionally longer—sometimes as long as

0.7 hours (see Pls.' Mot. Fees, d/e 59, Ex. 7, p. 4 (Entry of Nov. 2,

2011))—nothing about the correspondences suggests that they were

excessive or duplicative merely because more than one lawyer was

involved.  Rather, the precision with which Mr. Sigale documented

his hours expended in this case—broken down first into hours per

day and then hours per task—reveals the relevance and the

economical duration of his correspondences as well as the

contributions he made in representing Plaintiffs.  Second,

Defendants object to some of Mr. Sigale's hours as duplicative of

other lawyers' work, but without further explanation.  In the

absence of any argument from Defendants, the Court rejects these

objections because the staffing of more than one lawyer is not

presumptively unreasonable.  See NRA v. Oak Park, 871 F. Supp. at 789.

In total, Defendants' meritorious objections to Mr. Sigale's time expended total 1.6 hours—time spent in correspondence with the Clerk of Court in this district and the Clerk of Court for the Seventh Circuit Court of Appeals, and time spent on administrative tasks better suited for a non-professional or secretary, such as preparing and shipping hard copies of court filings.  Accordingly, the Court finds that Mr. Sigale reasonably expended 95.9 hours in this case.  The Court also finds that Mr. Sigale reasonably expended 17.3 hours in travel associated with this case, to be billed at half Mr. Sigale's awarded rate.

> *d. Mr. Jensen's hours are reduced from 236.6 hours to 182.6 hours.*

Turning finally to Mr. Jensen's hours:  Defendants challenge 195.6 hours billed by Mr. Jensen, seeking to reduce his total reasonable hours expended from 236.6 hours to 41.0 hours.  In adjusting the hours expended on the fee petition, the Court has already reduced Mr. Jensen's hours by 3.5 hours—from 11.7 hours to 8.2 hours.

If the reduction Defendants seek in Mr. Jensen's hours seem different in kind, not just in degree, from the challenges to Mr. Gura's and Mr. Sigale's hours, a brief discussion of Mr. Jensen's documentation practices may be illuminating.  In support of his portion of the fee demand, Mr. Jensen submitted time sheets that exemplify the disapproved practice of so-called "block" billing.  Each entry on Mr. Jensen's time sheets contains a line for the date, the total hours claimed for that date, and a serial listing of the work done on that date, all followed by a dollar figure representing the total hours multiplied by the claimed hourly rate.  For example, on May 24, 2011, Mr. Jensen claims 5.80 hours for the following tasks:

> Complete swearing-in for admission to Central District and prepare cover letter and registration form for clerk; telephone conference with Springfield Division clerk regarding judicial assignment and recusal procedures; research Central District decisions that concern or address recusal and reassignment of cases; complete written assessment to clients and review, revise and finalize same and send; telephone conference with M. Tempski regarding how to proceed; review of briefs and oral argument in Ezell for use in preliminary injunction motion; confer with D. Sigale by email regarding notice of recusal and status of service of process

(Pls.' Mot. Fees, d/e 59, Ex. 8, p. 6.)  A busy day, to be sure.  The entry does not differentiate the various tasks from one another in

any meaningful way, whether with respect to relevance of the task to the core issues of the clients' claims or even the amount of time spent on each task. Such documentation practices drastically increase the difficulty of the already trying task before the Court, to determine what hours have been reasonably expended in this case. Obviously, tasks such as preparing a registration form or calling the Clerk's office are not compensable at a lawyer's rates. These tasks are secretarial and, therefore, not compensable. Moreover, the Seventh Circuit has made clear that such billing practices simply will not do. <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93, 94, 98 (7th Cir. 1986) (affirming trial court's reduction in attorney's fees, by reducing hours claimed from 117.25 hours to 80 hours, because fee applicant's time entries gave vague descriptions of legal work done and total number of hours attributable to discrete tasks was uncertain).

Such documentation practices are especially unforgivable in the context of fee-shifting statutes. As a sister district court within our Circuit has observed,

> It is one thing to submit invoices of this kind to a client, who will ordinarily take at face value the assertions made and pay the amount requested, trusting that it is

> reasonable.  It is another thing, however, to submit
> copies of such invoices in support of a motion to compel
> payment by the adversary in litigation, who ordinarily
> would be expected to contest the reasonableness of the
> claim.

Bretford Mfg., Inc. v. Smith Sys. Mfg. Co., 421 F. Supp. 2d 1117,

1122 (N.D. Ill. 2006) (footnote omitted).  And, indeed, even a paying

client of one's own may reject one's block-billed invoices and

demand task-based billing instead if that client is a sufficiently

sophisticated consumer of legal services who is seeking to manage

costs.  See id. at 1122 n.1.  In light of these practices, this Court

has the discretion to apply across-the-board reductions where the

total number of hours attributable to compensable work is

uncertain.  See, e.g., Tomazzoli, 804 F.2d at 97–98.

Defendants have challenged some of Mr. Jensen's hours that

are obviously excludable on many of the same grounds as were

hours submitted by Mr. Gura and Mr. Sigale:  unnecessary,

administrative, or untimely.  Mr. Jensen appears to have submitted

hours that are obviously excludable on these grounds at roughly

the same rate as his co-counsel.  By this Court's reckoning,

approximately 1.7 hours of Mr. Jensen's time was secretarial or

administrative in nature.  Another 2.2 hours of Mr. Jensen's time

will also be excluded because it was time devoted to interviewing potential plaintiffs who never joined this case.  Subtracting these figures along with the Court's reduction in hours claimed to prepare the fee petition, Mr. Jensen's time is initially reduced to 229.2 hours.  Applying a 20% across-the-board reduction to this figure— in order to disentangle the hours that cannot be surgically removed from Mr. Jensen's block-billing—the Court finds that Mr. Jensen reasonably expended 183.4 hours on this case.  This figure is in line with the hours Mr. Jensen reports having expended for proceedings in this Court prior to appeal, during which time his time entries and those of his co-counsel indicate that he took the most prominent role in representing Plaintiffs.

### 2. Plaintiffs' Attorneys' reasonable hourly rates are determined with reference to the prevailing market rate in the relevant community of lawyers.

The second half of the lodestar calculation is the determination of reasonable hourly rates.  The best evidence of a lawyer's reasonable hourly rate, as borne out by the market, is the rate he actually charges clients for similar work.  Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012).  But where the court is unable to determine the lawyer's billing rate because he maintains

a contingent-fee or public-interest practice, then the court should look to the next best evidence, the rate charged by lawyers in the relevant community.  People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996); accord Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Reasonable hourly rates are determined by reference to the prevailing market rates in the relevant community of lawyers, regardless of whether plaintiff is represented by private or nonprofit counsel.  Blum, 465 U.S. at 895.

In the context of § 1988 and other fee-shifting statutes, of course, the term "prevailing market rates" is a misnomer:  Rather than determine a rate to be paid in victory or defeat (or perhaps contingently) by the prevailing lawyers' own clients after extensive discussion and negotiation, as would occur in a market, the Court must instead determine a reasonable hourly rate to be paid by the losing party, without the benefit of the bargaining.  In the Seventh Circuit, the determination of the reasonable hourly rate may be made by reference to a lawyer's opportunity cost in taking the case at hand instead of another, more remunerative case, but the rate is nevertheless capped at the prevailing market rate for lawyers

engaged in the type of litigation in which the fee is sought. <u>Cooper v. Casey</u>, 97 F.3d 914, 920 (7th Cir. 1996). The burden is on the fee applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." <u>Blum</u>, 465 U.S. at 895 n.11; <u>accord</u> <u>Pickett v. Sheridan Health Care Ctr.</u>, 664 F.3d 632, 640 (7th Cir. 2011).

In this case, Plaintiffs' Attorneys collectively rely on the <u>National Law Journal</u>'s billing rate survey from 2012, attached to their fee petition and indicative, Plaintiffs' Attorneys assert, of the billing rates in the relevant litigation community. After filing the fee petition, Plaintiffs' Attorneys provided supplemental authority to show that the City of Chicago agreed to pay rates between $300 and $975 per hour to plaintiffs' lawyers in <u>Illinois Association of Firearms Retailers v. City of Chicago</u>, many of whom also represented plaintiffs in <u>Shepard v. Madigan</u>, the case from the Southern District of Illinois with which this case was consolidated on appeal. (Notice Supplemental Authority, d/e 89, Ex. 2, p. 1 (Joint Statement at 1, No. 10-CV-4184 (N.D. Ill. June 25, 2014).)

Plaintiffs' Attorneys provided further supplemental authority to show a rate of $638.75 awarded under a fee-shifting statute to a prevailing lawyer of similar qualifications to Plaintiffs' Attorneys in a commercial defamation case in Washington, D.C., in June 2014. (See Notice Supplemental Authority, d/e 94.)  Finally, the Court notes that plaintiffs' lawyers in Shepard v. Madigan were awarded rates between $355 and $925, Mem. & Order at 12–15, No. 11-cv-0405 (S.D. Ill. Sept. 29, 2014), though plaintiffs appealed that fee award in a case currently pending before the Seventh Circuit.

Turning at last to the first set of Plaintiffs' Attorneys' individualized arguments, Plaintiffs' Attorney Mr. Gura claims a rate of $640 per hour.  In support of this rate, Mr. Gura submitted an affidavit to show that he set his "standard hourly rate" for the first time in 2012 at $600 per hour and rose to $640 per hour in 2014.  (Decl. Alan Gura, d/e 60, p. 3).  Mr. Gura averred that he was awarded $539 per hour in an agreed motion for fees in the U.S. District Court for the Northern District of Illinois in McDonald v. City of Chicago, and $435 per hour in the U.S. District Court for the District of the District of Columbia, using the "Laffey Matrix" methodology, in District of Columbia v. Heller.  (Id.).  Mr. Gura also

averred that seven lawyers in the National Rifle Association's companion case to <u>McDonald</u>, <u>NRA v. Chicago</u>, were awarded fees equal to or higher than his $640 hourly figure.  (<u>Id.</u>, p. 4.)  Mr. Gura provided an additional affidavit to show that he billed and collected at $640 per hour for consultation in a First Amendment matter in September 2014, though he does not say where the matter arose or how far it proceeded.  (<u>See</u> Supplemental Decl. Alan Gura, d/e 93.)

Defendants assert that Plaintiffs' Attorneys have not carried their evidentiary burden to corroborate their claimed rates and that the claimed rates do not reflect the relevant community.  In principal part, Defendants argue that Plaintiffs' Attorneys should have produced contracts with their paying clients under the purported aegis of this Court's grant to conduct limited discovery. (<u>See</u> Text Order of Jan. 2, 2014 (permitting Defendants to propound interrogatories and conduct depositions if necessary).)  Defendants further point out that Mr. Gura answered Defendants' interrogatory that Mr. Gura had billed Plaintiff SAF $300 an hour in this case. Defendants also suggest that the relevant community of lawyers is limited to those lawyers practicing constitutional law in and around Springfield, Illinois.  <u>But see</u> <u>Jeffboat, LLC v. Dir., Office of Workers'</u>

Comp. Programs, 553 F.3d 487, 490 (7th Cir. 2009) (interpreting relevant community to mean "community of practitioners[,] particularly when . . . the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market").

The Court is not altogether convinced that Plaintiffs' Attorneys have carried their burden to produce satisfactory evidence that their requested rates are in line with those prevailing in the relevant community.  To be sure, Plaintiffs' Attorneys were not required to produce contracts or other documentary evidence under this Court's permission to conduct limited discovery.  Perhaps, however, Plaintiffs' Attorneys would have been wise to produce such documentary evidence of their own volition—albeit in redacted form to conceal any matters covered by the attorney–client privilege—in order to carry their burden by producing the best evidence of the rate they actually charge clients for similar work.  Or perhaps Plaintiffs' Attorneys could have submitted third-party affidavits providing evidence as to what comparable lawyers charge for similar services, as is the preference in the Seventh Circuit.  See, e.g., Pickett, 664 F.3d at 647.  Plaintiffs' Attorneys' affidavits, on their

own, are not sufficient.  See Blum, 465 U.S. at 895 n.11; Pickett,

664 F.3d at 640.  Nor are Plaintiffs' Attorneys' responses to

Defendants' interrogatories any more enlightening than the

affidavits for this Court to determine Plaintiffs' Attorneys' actual

hourly rate.

Still, the Court will not simply award Mr. Gura $300 per hour,

the discounted rate he has charged SAF, for fear of imposing a

disincentive on future litigation in vindication of constitutional

rights.  Lacking any other evidence of the rate Mr. Gura actually

charges clients for similar work, the Court must turn to the next

best evidence, the rate charged by lawyers in the relevant

community.  People Who Care, 90 F.3d at 1310.  This Court finds

the following evidence relevant to its determination:  In 2011, the

Heller court awarded $435 per hour and the McDonald court

awarded $539 per hour to Mr. Gura.  The Illinois Association of

Firearms Retailers court awarded lawyers of varying experience

$300 to $975 per hour in another Second Amendment case in

Illinois.  (Notice Supplemental Authority, d/e 89, Ex. 2, p. 1.)

Taking the total award in Illinois Association of Firearms Retailers

and dividing by the total lawyer hours reported, a weighted average

of the hourly rate in that case works out to roughly $520 per hour.

The Shepard court detailed awarding various hourly rates of $340,

$355, $375, $395, $425, $440, $450, $475, $507.50, and $925.

Additionally, the Court acknowledges that the tables Plaintiffs'

Attorneys have submitted from the National Law Journal survey are

illustrative of prevailing billing rates of lawyers around the nation.

These rates are ultimately of limited persuasive value, however,

because Plaintiffs' Attorneys have done little to show the similarity

of their work to the work of the attorneys who answered the survey.

Finally, the Court acknowledges the limited persuasive weight

of the billing rates established in affidavits Defendants have

submitted from Springfield-area lawyers litigating other

constitutional claims.  Local lawyers and affiants Stephen R.

Kauffman, who has defended multiple § 1983 claims against the

Illinois Department of Transportation for political-viewpoint

employment discrimination at a rate of $200 per hour, and Russell

L. Reed, who has defended two § 1983 claims against the Illinois

Department of Corrections for deliberate indifference to prisoners'

medical needs at the same hourly rate, would no doubt be

competent to handle cases like this one.  These local lawyers' skill

and experience in § 1983 litigation would be transferable in significant measure, as the primary focus of proceedings before this Court in this case was the appropriateness of a preliminary injunction—a common tactical step in § 1983 cases.  Cf. Cooper, 97 F.3d at 920–21 (discussing the significance of transferrable litigation skills to a district court's determination of a fee petitioner's reasonable hourly rate).

Moreover, the local lawyers' § 1983 experience is all the more transferable given the limited complexity of the claims in this case, which required the discussion of just two Supreme Court cases, two controlling Seventh Circuit precedents, and four cases of persuasive authority from the Southern District of California, the Delaware Superior Court, and two nineteenth-century state courts—between the complaint and the Plaintiffs' Motion for Preliminary and/or Permanent Injunction—to address all Second Amendment-specific issues.  (See d/e 5; d/e 14; see also Ezell v. City of Chi., 651 F.3d 684 (7th Cir. 2011); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010); Peruta v. Cnty. of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), rev'd, 742 F.3d 1144 (9th Cir. 2014); In re McIntyre, 552 A.2d 500 (Del. Super. Ct. 1988); Nunn v. State, 1 Ga. 243

(1846); <u>State v. Chandler</u>, 5 La. Ann. 489 (1850).)  Finally, to

supplement their knowledge of Second Amendment subject matter,

the local lawyers would have benefited from the same opportunity

that Plaintiffs' Attorneys had to compare their Second Amendment-

specific work to that of the lawyers in the Southern District of

Illinois's parallel case, <u>Shepard</u>.  (<u>See, e.g.</u>, Pls.' Mot. Fees, d/e 59,

Ex. 6, p. 1 (Entry of May 13, 2011, detailing Mr. Gura's review of

<u>Shepard</u> complaint); <u>id.</u>, Ex. 7, p. 3 (Entry of Aug. 17, 2011,

detailing Mr. Sigale's review of NRA's response opposing defendants'

motion to dismiss in <u>Shepard</u>); <u>id.</u>, Ex. 8, p. 10 (Entry of July 11,

2011, detailing Mr. Jensen's review of injunction papers filed in

<u>Shepard</u>).)  In the end, only the local lawyers' lack of experience

representing parties in Second Amendment-specific § 1983 cases

limits the persuasive weight of their $200 hourly rates.

Further, this Court does not consider relevant the following

submissions because they are insufficiently substantiated or

because they do not focus adequately on the relevant community of

lawyers or the kind of litigation in this case:  Mr. Gura's asserted

standard hourly rates of $600 and $640; the award of $638.75

awarded in the commercial defamation case in Washington, D.C.;

and Mr. Gura's supplemental affidavit concerning a First Amendment matter billed and paid at $640. The Court also does not consider relevant the fees Mr. Gura avers were awarded to the NRA's lawyers in <u>NRA v. Chicago</u> because he has not shown why his experience or expertise merits an award at that the same level as the NRA's lawyers when he was awarded only $539 in <u>McDonald</u>.

The Court is left with the following rates to consider as most persuasive: $435 (Mr. Gura's awarded rate in <u>Heller</u>), roughly $520 (the weighted average of rates awarded to lawyers in the similar case <u>Illinois Association of Firearms Retailers</u>), and $539 (Mr. Gura's agreed rate in <u>McDonald</u>). These rates all fall reasonably within the range of rates awarded to lawyers in <u>Illinois Association of Firearms Retailers</u> and <u>Shepard</u>. For this reason, the Court finds that an average of these three rates is a reasonable hourly rate to award to Mr. Gura. The average is $497.39, which the Court rounds to $500 to avoid the appearance of improbable precision. <u>Cf.</u> <u>Ustrak</u>, 851 F.2d at 989.

Turning to the individualized arguments of Mr. Sigale and Mr. Jensen, Defendants have offered no additional grounds to oppose these Plaintiffs' Attorneys' requested rates. Therefore, the Court will

lean on the foregoing analysis of the materials Plaintiffs' Attorneys collectively rely on, with specific reference only to the evidence Mr. Sigale and Mr. Jensen have provided individually.

Mr. Sigale claims a rate of $500 per hour.  In support of this rate, Mr. Sigale submitted an affidavit to show that he charges $325 per hour to high-volume commercial litigation clients but estimates his time at $500 per hour when charging his customary flat rate to other clients.  (Decl. David G. Sigale, d/e 62, p. 3).  Mr. Sigale avers that in 2011, he was awarded $300 per hour in McDonald and $450 per hour in Pliego Gonzalez v. City of Omaha, No. 11-CV-335 (D. Neb.), another case regarding the Second Amendment.  Mr. Sigale further avers and attaches court orders as exhibits to show that he was awarded $500 per hour in agreed orders for attorney's fees in three other Second Amendment cases, Winbigler v. Warren County Housing Authority, No. 12-CV-4032 (C.D. Ill.), in 2013, Nino de Rivera Lajous v. Sankey, No. 13-CV-3070 (D. Neb.), in 2013, and Jackson v. Eden, No. 12-CV-421 (D.N.M.), in 2014.  Finally, Mr. Sigale averred that he was paid $500 per hour in the Second Amendment case Pot v. Witt, No. 13-CV-03102 (W.D. Ark.), because

the parties stipulated to his $10,000 fee in a matter in which he expended 20.0 hours.

Defendants counter that Mr. Sigale responded in interrogatories that he charged Plaintiff SAF $250 an hour in this case, and that Mr. Sigale has produced no evidence of a rate of $500 per hour charged to any paying client. Indeed, Mr. Sigale's only matters in which he was awarded $500 per hour are those in which defendants stipulated to this rate in an agreed order under a fee-shifting statute. The Court concludes that Mr. Sigale is entitled to a reasonable hourly rate of $420. This figure is well within the range of acceptable rates as considered in the more extensive analysis of market rates above. This figure also reflects the fact that Mr. Sigale was awarded a lower rate in <u>McDonald</u> and billed SAF at a lower rate as compared with Mr. Gura. Finally, this rate stands in roughly the same proportion to the $500 per hour this Court awards Mr. Gura as does Mr. Sigale's $250 hourly rate charged to SAF to Mr. Gura's rate of $300 per hour.

Mr. Jensen claims a rate of $450 per hour. In support of this rate, Mr. Sigale submitted an affidavit to show that he charges $350 per hour for less complex, general commercial matters and $450

per hour for complex litigation.  (Decl. David D. Jensen, d/e 61, p.

3).  Mr. Jensen also averred that he first represented Plaintiff SAF

while an associate at Duane Morris, LLP, where his standard hourly

rate was $325 but the firm used a flat-fee arrangement to

accommodate SAF's cost concerns.  (Id. at 3–4.)  Finally, Mr. Jensen

averred that his retention agreement with SAF memorializes an

understanding that the market rate of his services with SAF is $450

but that he offers SAF a discount, unlike other clients, because of

his desire to work on Second Amendment plaintiffs' cases.  (Id. at

5.)

Defendants counter that Mr. Jensen responded in

interrogatories that he charged Plaintiff SAF $250 an hour in this

case.  Defendants also argue that Mr. Jensen may charge $450 per

hour in complex litigation, but that the claims asserted in this case

raised a single question of law that, though novel as previously

noted, were not complex, in that the parties had little case law to

speak of.  The Court concludes that Mr. Jensen is entitled to a

reasonable hourly rate of $400.  This figure is well within the range

of acceptable rates as considered in the more extensive analysis of

market rates above.  This figure also reflects the fact that Mr.

Jensen has less experience in Second Amendment litigation than either Mr. Gura or Mr. Sigale, as shown by a review of each of Plaintiffs' Attorneys' affidavits in this case.

Applying an hourly rate of $500 to the 70.5 hours reasonably expended by Alan Gura (for a subtotal of $35,250.00); an hourly rate of $420 to the 95.9 hours reasonably expended by David Sigale (subtotal $40,278.00); and an hourly rate of $400 to the 183.4 hours reasonably expended by David Jensen (subtotal $73,360.00), the Court arrives at a figure of $148,888.00.  An additional $1,350.00, for 5.4 hours of necessary travel billed at $250 per hour, is awarded to Mr. Gura, and an additional $3,633.00, for 17.3 hours of necessary travel billed at $210 per hour, is awarded to Mr. Sigale.  The final lodestar total is $153,871.00.

### 3. The Court makes no adjustment to the lodestar figure because Plaintiffs' Attorneys achieved complete success.

Defendants' final argument to oppose the amount of Plaintiffs' Attorneys' claimed fees is a broad challenge to the degree to which Plaintiffs prevailed on the merits in this case.  Defendants assert that Plaintiffs did not prevail on various legal grounds including an Equal Protection argument and a Due Process argument, and that

Plaintiffs did not secure a Motion for Preliminary Injunction in this Court. Confusingly, Defendants also assert that Plaintiffs did not prevail on Defendants' first Motion to Dismiss as Moot in this Court, which was denied following Plaintiffs' opposition.

The Court will not apply any reduction to the lodestar figure as calculated based on the degree to which Plaintiffs prevailed. "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." Hensley, 416 U.S. at 435. The Seventh Circuit has recognized this principle in holding that a court ought to "subtract time for losing claims, but a losing argument in support of a successful claim for relief is fully compensable time." Kurowski, 848 F.2d at 776 (emphasis added). Defendants seek to exclude Plaintiffs' Attorneys' time on the Motion for Preliminary Injunction, for example, because this Court denied that motion, but in the end, Plaintiffs prevailed at the Court of Appeals. Meanwhile, Defendants have made no attempt to distinguish among Plaintiffs' claims because the thrust of the complaint was a single claim, that the challenged Illinois gun laws violated the Second Amendment. On this point, Plaintiffs achieved a total victory that reached its acme in the Illinois General Assembly's passage of the Firearm

Concealed Carry Act. Indeed, the extent of Plaintiffs' victory is the very basis of this Court's ruling today—in Defendants' favor—that Plaintiffs' claims are now moot.

Because Plaintiffs achieved a complete success in this suit, no reduction in the lodestar figure is warranted. Accordingly, the Court awards the full $153,871.00 as calculated.

## IV. REASONABLE COSTS OF $3,008.29 ARE ALLOWED TO PLAINTIFFS UNDER FEDERAL RULE OF CIVIL PROCEDURE 54 AND § 1988.

Federal Rule of Civil Procedure 54(d)(1) provides that costs— other than attorney's fees—should be allowed to the prevailing party. Rule 54(d) "establishes a presumption in favor of a cost award." Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 427 (7th Cir. 2000). A motion to recover costs under § 1988 encompasses all reasonable out-of-pocket expenses the prevailing party has incurred in order to effectuate the purpose underlying the statute's shifting of fees, namely, to eliminate any cost disincentive to pursuing the vindication of constitutional rights. See Henry v. Webermeier, 738 F.2d 188, 192 (7th Cir. 1984). Plaintiffs' Attorney Mr. Gura has submitted documentation to show compensable expenses of $928.79; Mr. Sigale, $933.48; and Mr. Jensen, $1,331.02.

Plaintiffs' Attorneys' claimed expenses total $3,193.29. Defendants object to certain of these expenses as excessive, insufficiently documented, or otherwise noncompensable.

Defendants' objections miss the mark. Defendants object to photocopying costs claimed by Mr. Sigale of $176.48 incurred May 29, 2012, and $360.02 incurred January 25, 2013, asserting that "[n]o documentation was provided to substantiate these charges." (Defs.' Fee Pet. Resp. & Objections, d/e 70, p. 25.)  But the docket in this case includes receipts substantiating each of these charges for photocopying.  (See Pls.' Ex. re Mot. Atty.'s Fees, d/e 64, pp. 19–21.)  Moreover, a cursory review of the appellate docket in this case reveals that paper copies of Plaintiffs' Appellants' Brief and Plaintiffs' Answer to the Petition for Rehearing En Banc were due on May 31, 2012, and January 28, 2013, respectively, justifying Plaintiffs' claimed photocopying costs. See Appellants' Reply Br., Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012) (No. 12-1269), d/e 37; id. d/e 69; see also Fed. R. App. P. 31(b) (Serving and Filing Briefs; Number of Copies). Defendants similarly object to parking costs that Plaintiffs' Attorneys incurred in connection with court dates in Springfield and Chicago, which have been properly

documented with copies of receipts in the petition for fees and costs.

Defendants also object to paying hotel and meal rates above the rates approved for employees of the State of Illinois and to paying gratuities on Plaintiffs' Attorneys' travel expenses.  (See Defs.' Fee Pet. Resp. & Objections, d/e 70, p. 26.)  Plaintiffs' Attorneys do not enjoy the bargaining position the State of Illinois does to obtain discounted or tax-free hotel accommodations or meals that may become necessary in the course of litigation. Accordingly, the State of Illinois's rates are not an appropriate baseline against which to judge the reasonableness of Plaintiffs' Attorneys' expenses.  In addition, the gratuities Plaintiffs' Attorneys paid were not only reasonable but necessary in the modern service economy.  For these reasons, the Court finds Plaintiffs' Attorneys' claimed travel expenses reasonable and compensable.

Not all of Defendants' objections are baseless, however. Plaintiffs' Attorney David Jensen cannot reasonably hold Defendants accountable to pay the fee for his admission to practice in the Central District of Illinois, $185.00.  Subtracting this cost

from Plaintiffs' Attorneys' total claimed expenses of $3,193.29

results in an award of costs of $3,008.29.

## V. PLAINTIFFS' MOTIONS FOR SANCTIONS ARE DENIED.

Plaintiffs finally bring Motions for Sanctions against the State

of Illinois's attorneys under the Court's inherent supervisory powers

and under 28 U.S.C. § 1927.  Federal courts have the inherent

power to impose sanctions upon parties for abusive litigation.  See

Carr v. Tillery, 591 F.3d 909, 919 (7th Cir. 2010).  Appropriate

sanctions include an award of reasonable attorney's fees or other

monetary sanction, as well as injunctions to prevent future lawyer

misconduct.  Id.  But the inherent power to sanction is limited to

"cases in which a litigant has engaged in bad-faith conduct or

willful disobedience of a court's orders."  Chambers v. NASCO, Inc.,

501 U.S. 32, 41 (1991); see also Grochocinski v. Mayer Brown Rowe

& Maw, LLP, 719 F.3d 785, 799 (7th Cir. 2013).  The Seventh

Circuit Court of Appeals has recognized that no single litmus test is

used to determine what constitutes bad faith, but more than mere

negligence is required.  Id.

Section 1927 supplements federal courts' inherent authority,

providing for sanctions against attorneys who "multipl[y] the

proceedings . . . unreasonably and vexatiously."  Sanctions are

appropriate under § 1927 when "counsel acted recklessly, counsel

raised baseless claims despite notice of the frivolous nature of these

claims, or counsel otherwise showed indifference to statutes, rules,

or court orders."  Kotsilieris v. Chalmers, 966 F.2d 1181, 1184–85

(7th Cir. 1992).

    Plaintiffs contend that attorneys for the State of Illinois have

acted in bad faith in their filings to oppose Plaintiffs' fee petition.

Plaintiffs deem "frivolous" several of Defendants' arguments

opposing the fee petition, which can be roughly categorized as

follows:  opposition to Plaintiffs' prevailing-party status; opposition

to some of Plaintiffs' Attorneys' hours as duplicative; the request in

limited discovery that Plaintiffs' Attorneys produce documentary

evidence; arguments about the proper hourly rate to award

Plaintiffs' Attorneys; and objections to certain of Plaintiffs'

Attorneys' necessary expenses.  (See Mem. P. & A. Supp. Pls.' Mot.

Sanctions, d/e 87, pp. 3–5.)  Plaintiffs also accuse Defendants of

misrepresenting Plaintiffs' Attorneys' responses to court-ordered

interrogatories.  (Id., p. 4.)  As a remedy, Plaintiffs seek an award of

additional fees and costs pursuant to their "forthcoming 'fees on fees' motion."  (See Pls.' Mot. Sanctions, d/e 86, p. 1.)

The Court finds that Defendants have not engaged in bad-faith conduct or willful disobedience of this Court's orders such that they are subject to sanctions under this Court's inherent supervisory powers.  Defendants have raised objections in good faith to Plaintiffs' Motion for Attorney's Fees in a proceeding under § 1988, one in which all parties could fully anticipate the losing party to contest the reasonableness of the winner's claimed fee.  See Bretford Mfg., Inc., 421 F. Supp. 2d at 1122.  The Court has fully addressed the mixed quality of both parties' arguments on the issue of fees.  Some of Defendants' objections missed the mark, while on others Defendants' aim was true.  Likewise, Plaintiffs' Attorneys' efforts to substantiate their hours and hourly rates were adequate in some respects and inadequate in others.  Along these same lines, Defendants did not willfully disobey any order of this Court in requesting documentary evidence during limited discovery.  Even though the interrogatories and depositions authorized did not compel Plaintiffs to divulge documentary evidence, neither did Plaintiffs carry their burden to prove up their claimed hourly rates.

Redacted documentary evidence of the sort Defendants requested would have easily met this burden. Perhaps Defendants should not have asked for the documentary evidence, but equally, perhaps Defendants should not have had to ask. Defendants did not, however, directly contravene any order of this Court in the asking.

Similarly, Defendants did not multiply proceedings in this court unreasonably or vexatiously such that they are subject to sanctions under § 1927. Defendants' first Motion to Dismiss as Moot was denied by this Court, but today the Court grants Defendants' Motion to Dismiss Renewed. Defendants' opposition to Plaintiffs' Petition for Attorney's Fees is neither unreasonable nor vexatious, but rather, as mentioned, entirely to be expected. Moreover, the Court finds that Defendants' arguments opposing Plaintiffs' prevailing-party status, though ultimately unpersuasive, were made using good-faith interpretations of controlling case law and good-faith attempts to distinguish the case at bar from those cases in which courts found prevailing-party status. Accordingly, Defendants' arguments were not baseless, frivolous, or otherwise indifferent to controlling statutes or case law.

Nonetheless, the Court must address Defendants' omission of portions of Plaintiffs' Attorneys' answers to authorized interrogatories cited in opposition to an award of attorney's fees. The Court is troubled by this omission but ultimately credits Defendants' representation that it was inadvertent. (See Mem. Law Supp. Defs.' Resp. Pls.' Mot. Sanctions, d/e 90, at 7.) The Court instead believes that this mistake was the product of the persistent state of insufficient resources in Illinois's state agencies, especially in light of the consistent good-faith conduct of the Office of the Illinois Attorney General in proceedings before this Court. See Johnson v. C.I.R., 289 F.3d 452, 456–57 (7th Cir. 2002) (noting that lower court would have been remiss not to consider lawyer's previous conduct before it, and that a good record may redound to the lawyer's benefit, when considering sanctions under § 1927). Accordingly, the Court ascribes no malice to Defendants' omissions, though they should not be repeated.

Plaintiffs' Attorneys may be entitled to fees on fees in their promised motion, but the Court hopes to see both parties substantiate their positions more soundly and more efficiently the next time round. "A request for attorney's fees should not result in

a second major litigation." <u>Hensley</u>, 461 U.S. at 437.  The Court

notes with approval the procedures for determining and assessing

attorney's fees in the U.S. District Court for the Northern District of

Illinois under Local Rule 54.3 and encourages the parties, in the

strongest of terms, to attempt to reach an agreed motion following

the wisdom of those procedures and implementing the findings of

this opinion.

Because Defendants did not engage in bad-faith conduct,

willfully disobey this Court's rules or orders, or advance baseless or

frivolous arguments to multiply proceedings in this Court

unreasonably and vexatiously, the Court denies Plaintiffs' Motions

for Sanctions.

## VI.  CONCLUSION.

For the forgoing reasons, Plaintiffs' Motion for Attorney's Fees

(d/e 58) is GRANTED IN PART and DENIED IN PART.  Plaintiffs'

Attorneys are entitled to attorney's fees totaling $153,871.00.

Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29.

Plaintiffs' Motions for Sanctions (d/e 84; d/e 86) are DENIED.

Defendants' Motion to Dismiss Renewed (d/e 72) is GRANTED.

Under Federal Rule of Civil Procedure 54(d)(2)(B), any supplemental

fee petition in this case shall be filed no later than 14 days after the entry of judgment. The Court will treat liberally any joint motion for extension of time to file a supplemental fee petition so that the parties may resolve the issue amicably. This case is CLOSED.

IT IS SO ORDERED.

ENTER: November 24, 2014

FOR THE COURT:             s/ Sue E. Myerscough
                          SUE E. MYERSCOUGH
                          UNITED STATES DISTRICT JUDGE

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER, SECOND AMENDMENT FOUNDATION, INC., AND ILLINOIS CARRY | ) ) ) |

Plaintiffs

vs.

| | |
|---|---|
| LISA MADIGAN, in her official capacity as Attorney General for the State of Illinois, and HIRAM GAU, in his official capacity as Director of the Illinois State Police | ) ) ) ) |

Case Number: 11-3134

Defendants

## JUDGMENT   IN A CIVIL CASE

☐ **JURY VERDICT**.   This action came before the Court for a trial by jury.    The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**.    This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** pursuant to an Opinion entered by the Honorable Sue E. Myerscough on November 24, 2014, Plaintiffs' Motion for Attorney's Fees (d/e 58) is GRANTED IN PART and DENIED IN PART.    Plaintiffs' Attorneys are entitled to attorney's fees totaling $153,871.00.    Plaintiffs' Bill of Costs is allowed in the amount of $3,008.29. Plaintiffs' Motions for Sanctions (d/e 84; d/e 86) are DENIED.    Defendants' Motion to Dismiss Renewed (d/e 72) is GRANTED.    Under Federal Rule of Civil Procedure 54(d)(2)(B), any supplemental Plaintiffs' fee petition in this case shall be filed no later than 14 days after the entry of judgment. The Court will treat liberally any joint motion for extension of time to file a supplemental fee petition so that the parties may resolve the issue amicably. This case is CLOSED. (See Written Opinion).---------------------------------------------------------------

Dated: **November 24, 2014**

s/ Kenneth A. Wells

Kenneth A. Wells
Clerk, U.S. District Court